OPINION OF THE COURT
David O. Boehm, J.
By notice of motion dated August 12, 1977, plaintiff, the Chase Manhattan Bank, hereinafter referred to as the bank, moved to dismiss affirmative defenses and counterclaims interposed by the defendant, Shirley Natarelli, hereinafter referred to as Shirley, against plaintiff’s action for deficiency sums due upon a note. Thereafter, by order to show cause, dated August 22, 1977, defendant moved to vacate a default judgment entered in the Monroe County Clerk’s office against her on July 27, 1977, in the amount of $39,969.03, including interest, and to permit her to interpose an answer containing affirmative defenses and counterclaims. Both motions were consolidated and argued together.
The facts are undisputed. On June 22, 1973 both Mario and Shirley Natarelli, husband and wife, executed a guarantee agreement with Chase Manhattan Bank guaranteeing the payment of present and future credit extended to Glenwood Stone Company, a corporation of which Shirley Natarelli is secretary and Mario Natarelli is president. Mario Natarelli was also the owner of the realty occupied by Glenwood Stone Company. On June 22, 1973, Mario Natarelli executed a collateral security mortgage whereby the realty was given as security to the bank for the amount of $80,000 already owed by Glenwood to the bank and for future indebtedness "as security for a guarantee given by the mortgagor” to the bank, dated the same day. This mortgage was recorded in the Monroe County Clerk’s office on June 28, 1973. On January 27, 1975, Mario gave a second collateral security mortgage to the bank upon the same realty for the amount of $50,000, which was recorded in the Monroe County Clerk’s office on the same date. This mortgage also secured "all fixtures, chattels, and articles of personal property” on the premises. On the same date, Mario, as president of Glenwood, executed a demand note in the amount of $121,500, reflecting the balance then owed the bank by Glenwood.
By letter dated August 8, 1976, counsel for the bank notified the Internal Revenue Service, which had seized Glenwood’s personal property, that pursuant to a "prior perfected lien” *81 the bank would conduct a public foreclosure sale of Glen-wood’s personal property under article 9 of the Uniform Commercial Code. Shortly thereafter, the property was sold at public sale. The auctioneer’s statement, dated September 25, 1976, sets forth that the personal property was sold for the gross amount of $7,390.10 minus expenses, or a net amount of $6,474.14. The proceeds of the sale were applied to the balance of the principal still due and owing on the note at that time, leaving a balance of $115,075.86.
Personal notice of the sale was given to Glenwood’s counsel, who was also the personal attorney for Mario. This same counsel presently represents Shirley in the motions now before this court. He also represented Mario and Glenwood Stone Company in the action brought by the bank to foreclose the two collateral security mortgages, Although Shirley was not given personal notice of the public auction, Mario was present when preparation for the public auction sale of Glen-wood’s assets was being made by the bank and notice of the sale was published in both the Rochester Democrat and Chronicle and the Buffalo Evening News.
By summons and complaint, dated August 8, 1975, the bank commenced a foreclosure action on both mortgages on the real estate located on the Sweden-Walker Road against Glenwood and Mario. A judgment of foreclosure and sale was duly entered in the Monroe County Clerk’s office on April 2, 1976, in the amount of $147,316.78, plus $88.25 as costs. On July 7, 1976, after the notice of sale was published in the Daily Record and the notice also posted, the property was sold to the bank, the highest bidder, for $200 and transferred to the bank by referee’s deed dated July 19, 1976.
The bank, by notice of motion on October 6, 1976, moved for a deficiency judgment against Mario for the balance of the unsatisfied mortgage debt, based on the January 27, 1975 note, and on the guarantee agreement Mario had personally executed June 22, 1973 with the bank.
Neither Mario nor Glenwood interposed an answer or affidavit in opposition to the complaint for foreclosure or for the notice of motion for the deficiency judgment. Mario appeared through a notice of appearance served by his attorney. After several adjournments, Justice Robert J. McDowell, of this court, by order entered October 21, 1976, directed that the referee’s report of sale be confirmed and that proof in connection with the motion for the deficiency judgment be taken in *82 this court on December 1, 1976. On that date Mario’s counsel requested an adjournment because he was not prepared to proceed, stating he had not yet received his appraiser’s report. Counsel indicated that an appraisal would soon be forthcoming from appraiser Guy Humphreys and that he would make this report available to the bank’s attorney.
Justice Robert P. Kennedy of this court granted an adjournment. It is significant to note that at this same appearance before Justice Kennedy, the attorneys for the bank and for Mario stipulated on the record (see CPLR 2105) that the only "issue remaining and contested between the parties in this action, is the question of the fair and reasonable market value of the subject premises upon which the mortgage foreclosure action was brought.”
After further adjournment, also granted at the request of Mario’s attorney, proof was heard at a nonjury trial before Justice Kennedy on March 3, 1977, at which time Mario and his counsel were present, as was counsel for the bank. At the trial, the bank presented an appraisal report appraising the fair market value of the property at $175,000. Mario not only failed to introduce an appraiser’s report as counsel had earlier indicated he wanted to do, but also failed to offer any proof in opposition.
By order dated March 8, 1977, Justice Kennedy determined that the bank was entitled to a deficiency judgment of $37,456.70, plus interest. This sum reflected the deficiency over and above the market value of $175,000, as proven by the bank through its appraiser’s report, set off from the "total of all prior liens and encumbrances” in the amount of $212,456. On March 10, 1977, a judgment was entered in the Monroe County Clerk’s office against Mario for $38,898.70, including interest, and a copy of the judgment with notice of entry was served on defendant’s counsel, Mario made no postverdict motion for a new trial, pursuant to CPLR 4405, nor did counsel file and serve a notice of appeal from the judgment.
Mario, however, did move within 30 days after entry of the judgment to reopen on the asserted grounds of newly-discovered evidence in the form of an appraisal report which had been prepared by Frank Natarelli, the father of Mario. Although, by Frank Natarelli’s own admission, the appraisal is dated July 12, 1976,[1] it was never made available to the court *83 or to the bank’s attorneys or otherwise offered as proof at the trial before Justice Kennedy. Subsequently, by order dated April 14, 1977, Justice Edward O. Provenzano of this court denied the motion to reopen "in all respects”. A notice of appeal from this order has been filed and served but no appeal has as yet been perfected.
On June 30, 1977, a summons and complaint were personally served on Shirley seeking judgment for $38,898.70, plus interest, as the deficiency due under the guarantee agreement she and her husband had executed on behalf of Glenwood on June 22, 1973. On July 27, 1977, a default judgment was entered against Shirley in the Monroe County Clerk’s office in the amount of $39,969.06. It appears she neither answered the complaint nor otherwise appeared in the action. On the same day, plaintiff’s counsel served a copy of the judgment with notice of entry on Shirley’s counsel and, on the same date, Shirley’s counsel served an answer containing five affirmative defenses and four counterclaims upon plaintiff’s counsel.[2]
The bank has now moved to dismiss Shirley’s answer and counterclaims upon a number of grounds, including failure to state a cause of action and res judicata. Shirley has moved to open and vacate the default judgment against her and for an order permitting her to interpose an answer and various counterclaims. Her application has been granted to the extent of reserving decision with respect to her first and second affirmative defenses and the first counterclaim (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.03). The resolution of the issues relating to these two affirmative defenses and counterclaim forms the basis for this decision. The remaining affirmative defenses and counterclaims were dismissed by this court upon oral argument, and incorporated in an order of this court dated October 3, 1977, but a few additional comments are appropriate.
In her third affirmative defense and second counterclaim, Shirley alleges that after the bank assumed possession of Glenwood’s property in the foreclosure action, the bank was negligent in preserving the value of the property and thereby diminished its value. However, in the foreclosure action another Justice of this court, upon the evidence presented, determined the fair market value of the property. This prior *84 determination is res judicata and cannot be collaterally attacked in this action either by way of defense or affirmative claim.
The question of the respective parties’ care in maintaining the property was either necessarily determined or could have been litigated in the foreclosure action as directly bearing on the market value of the property (see Wachtell, New York Practice Under the CPLR [5th ed], pp 452-453; 5 Weinstein-Korn-Miller, supra, par 5011.23 et seq.). Furthermore, while Shirley was not a formal party to the foreclosure action, she was not only in privity as an officer of the corporation, but was also represented by the same counsel as that of her husband, Mario, and the Glenwood Corporation (see 5 Weinstein-Korn-Miller, supra, par 5011.32). She may not now belatedly attempt to question the foreclosure court’s determination as to the fair market value of the property.
In her fourth affirmative defense and third counterclaim, Shirley alleges that the bank has collected several accounts receivable owing to Glenwood. This unsupported allegation in an application to open a default is insufficient to sustain a new defense and counterclaim (see 3 Weinstein-Korn-Miller, surpa, par 3013.03 and 4 Weinstein-Korn-Miller, supra, par 3211.40).
This point is especially true in the present case where Mr. and Mrs. Natarelli are both officers of the company and are, therefore, presumed to know its business (see 12 NY Jur, Corporations, §§ 717, 719, 721, 723). However, permission has been granted to defendant to demand by "Bill of Particulars a statement of all moneys received by the secured creditor in reduction of the principal amount of the indebtedness due to plaintiff.” Should it develop that the bank did collect accounts receivable and did not apply these sums to the reduction of the indebtedness, defendant may then apply for appropriate relief.
In Shirley’s fifth affirmative defense, she alleges that she executed the guarantee agreement "under duress and, therefore, said agreement was without valid consideration.” Again, this bare assertion standing by itself is insufficient as a matter of law to raise this narrowly restricted defense (see, e.g., Austin Instrument v Loral Corp., 29 NY2d 124; Joseph F. Egan, Inc. v City of New York, 17 NY2d 90).
The remaining issues to be resolved relate to the merit and *85 validity of the two affirmative defenses and one counterclaim on which decision was reserved.
The first aspect of Shirley’s argument is that since she is a guarantor, she was entitled to but was not given personal notice of the sale of the secured collateral and assets of Glenwood. The Uniform Commercial Code required that she be given notice, defendant argues, and, therefore, plaintiff is not entitled to a deficiency judgment.
Shirley also asserts that, irrespective of notice, Glenwood’s assets and collateral were sold for nominal sums substantially less than their market value. Because the Uniform Commercial Code requires that the disposition of the collateral be commercially reasonable, Shirley claims that she is entitled to damages.
The bank, in response, argues that Shirley as a guarantor is not entitled to notice but, even if she is, she was given sufficient notice under the facts and circumstances of this case. Plaintiff further argues that the sale of the collateral was commercially reasonable.
The initial question of whether a guarantor of a secured party is entitled to notice of sale of the collateral seems to be a case of first impression in New York.
The only reported decision involving a similar issue appears to be Chemical Bank v Lincoln Park Labs. (NYLJ, Nov. 16, 1976, p 6, col 3). In this case, the court denied plaintiff’s motion for summary judgment against defendant corporation and individual guarantor defendants for deficiency sums due under a leasing agreement for equipment. The plaintiff bank had seized the equipment after default in rental payments by the corporation. Defendant interposed the defense that plaintiff had failed to comply with the requirement of subdivision (3) of section 9-504 of the Uniform Commercial Code that they be given notice of the dispositional sale of the equipment. Plaintiff argued that the notice requirement was dispensed with because defendant had abandoned the property. Defendant denied abandoning the equipment. Based on these facts, as controverted, the court held it could not determine the issue of compliance with the notice provision solely on the motion papers. Thus, it did not directly pass on the issue relating to the need to give a guarantor of payment notice of the disposition of collateral.
Turning to the code itself, section 9-503 of the Uniform Commercial Code permits the secured party to take possession *86 of the collateral without judicial process after default. This was done in the present action.[3]
Subdivision (1) of section 9-504 of the Uniform Commercial Code permits a secured party to sell, lease or otherwise dispose of the collateral. Subdivision (3) of this section sets forth the manner of disposition, as follows: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor”.
In addition, to the extent rights are given a debtor and duties are imposed upon a creditor, including notice of the disposition of collateral, they may not be waived or varied until after default (Uniform Commercial Code, § 9-501, subd [3], par [b]; Marine Midland Bank-Cent. v Watkins, 89 Misc 2d 949, 951-952; Federal Deposit Ins. Corp. v Farrar, 231 NW2d 602 [Iowa]; 69 Am Jur 2d, Secured Transactions, § 617; C.I.T. Corp. v Haynes, 161 Me 353; 79 CJS, Secured Transactions, § 107).
The pivotal question, then, becomes whether a guarantor has the same status as a debtor with respect to the issues here. Section 9-105 (subd [1], par [d]) of the Uniform Commercial Code defines what constitutes a debtor: "(d) 'Debtor’ means the person who owes payment or other performance of the obligation secured, whether or not he owes or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor’ means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both”.
The code is silent on the question as to whether a guarantor is also a debtor as defined above. The Official Comment and *87 New York Annotation to this section are also silent on this question and are similarly couched in general language (see McKinney’s Cons Laws of NY, Book &2Vz, Uniform Commercial Code, § 9-105, Official Comment 2, p 362 and NY Ann, p 365; "Although [this term has] a common business meaning, there is no statute which defines [it] for secured transactions.”; see, also, 4 Anderson, Uniform Commercial Code [2d ed], p 77). If a guarantor is a debtor under this broad definition, then the panoply of rights and duties imposed under article 9 would come into play (see 2 Hawkland, A Transactional Guide to the Uniform Commercial Code, pp 586-587). Furthermore, there appear to be no reported decisions interpreting the term "debtor” in its broadest meaning under the definitional provision of section 9-105 (see, e.g., 4 Anderson, Uniform Commercial Code [2d ed], pp 82-83).
Initial inquiry into common law (Uniform Commercial Code, § 1-103) and the dictionary meaning of the terms "debtor” and "obligor” give little guidance. The term "obligor” is often simply interchanged with the term "debtor” (see 67 CJS, Obligor, p 18). Similarly, a "debtor” is an individual liable for a claim and includes an "obligor” (see 26 CJS Debtor, p 34). Although one may turn to the dictionary to determine the sense in which a word is employed (Matter of Cortland-Clinton, Inc. v New York Dept. of Health, 59 AD2d 228), the dictionary defintion is virtually tautological as "one under obligation to another” (Webster’s New Third International Dictionary, p 583; cf. General Business Law, § 511, subd 5). These terms are subject to such broad interpretation that they no more answer the question than does the Uniform Commercial Code as to whether the term "debtor” includes "guarantor”.
The answer, it would seem, must be sought in the relevant code language and in examining the function of article 9, along with the policy of the code itself (see Uniform Commercial Code, § 1-102, subd [1]; Hillman, Construction of the Uniform Commercial Code: UCC Section 1-103 and "Code” Methodology, 18 B.C. Indus and Com L Rev 655, 655-660, 709-710).
The purpose of article 9 is to end the fragmentation of treatment of the various types of "secured transactions” (see 2 Hawkland, supra, p 566). The purpose of the code in general, including article 9, is to simplify, clarify and modernize the law governing commercial transactions (Uniform Commercial *88 Code, § 1-102, subd [2], par [a]; McKinney’s Cons Laws of NY, Book 62 Vi; Uniform Commercial Code, § 9-101; NY Ann., Historical Note, p 322; cf. 68 Am Jur 2d, Secured Transactions, § 4).
Under both the common law (see 10 Williston, Contracts [3d ed], § 1237, pp 758-761; 38 CJS, Guaranty, § 63, p 1225) and the law of New York (Lowenstein & Sons v Roselle Mfg. Co., 9 Misc 2d 617; 57 NY Jur, Suretyship and Guaranty, § 156; see, also, General Phoenix Corp. v Cabot, 300 NY 87), the creditor is under no duty to give the guarantor notice of the principal’s default without an express provision in the contract. Failure to give notice of default will not relieve a guarantor from liability in the absence of an affirmative act by the creditor tantamount to fraud or which causes the guarantor ascertainable economic injury (see 57 NY Jur, Suretyship and Guaranty, supra, §§ 115, 153-154; 38 CJS, Guaranty, supra, § 81). Nor does the insolvency of the principal debtor release the guarantor as asserted by Shirley Natarelli (see 38 Am Jur 2d, Guaranty, § 109; 38 CJS, Guaranty, supra, § 70).
However, in view of the code’s "scheme * * * to make distinctions * * * along functional rather than formal lines” (McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code § 9-101, Official Comment, p 320), it would seem that a "guarantor” is a "debtor” within the meaning of article 9. The commentators who have addressed this problem persuasively argue this conclusion (see Sachs and Belgrad, Liability of the Guarantor of Secured Indebtedness After Default and Repossession Under the Uniform Commercial Code: A Walk on the Wild Side by the Secured Party, 5 U Balt L Rev 153; Clark, Suretyship in the Uniform Commercial Code, 46 Tex L Rev 453, 477-478; see, also, 68 Am Jur 2d, Secured Transactions, supra, § 40; Ann., 30 ALR 3d 9, 81; but see, 4 Anderson, Uniform Commercial Code [2d ed], p 618).
In addition, the majority of jurisdictions addressing this precise question have also held that guarantors are debtors within the meaning of subdivision (3) of section 9-504 of the Uniform Commercial Code (see Hepworth v Orlando Bank & Trust Co., 323 So 2d 41 [Fla App]; Barnett v Barnett Bank of Jacksonville, 345 So 2d 804 [Fla App]; T & W Ice Cream v Carriage Barn, 107 NJ Super 328; De Lay First Nat. Bank & Trust Co. v Jacobson Appliance Co., 196 Neb 398; Bank of Gering v Glover, 192 Neb 575; Mutual Finance Co. v Politzer, 21 Ohio St 2d 177; Weinstein v United States, 511 F2d 56 *89 [followed Politzer]; see, also, Rushton v Shea, 423 F Supp 468, 470; First Nat. Bank & Trust Co. v Kunes, 230 Ga 888; Norton v National Bank of Commerce of Pine Bluff, 240 Ark 143; Atlas Thrift Co. v Horan, 27 Cal App 3d 999; Camden Nat. Bank v St. Clair, 309 A2d 329 [Me]).
Only three courts have taken the view that a guarantor is not entitled to notice under subdivision (3) of section 9-504 (see First Nat. Park Bank v Johnson, 553 F2d 599; Brinson v Commercial Bank, 138 Ga App 177; A. J. Armstrong Co. v Janburt Embroidery Corp., 97 NJ Super 246).
The validity, however, of the Brinson and Armstrong holdings is in question. While the earlier Kunes decision did not involve a Uniform Commercial Code dispositional sale, the court was concerned with interpreting the statutory term “debtor”[4] and the right to notice. The court in Brinson did not refer to the Kunes holding, and summarily stated that a guarantor was not entitled to notice because "there is nothing shown in the Uniform Commercial Code requiring such notice to be given to a guarantor” (Brinson v Commercial Bank, supra, p 178). However, there appears to be no analytical basis for different treatment of guarantors under the statutes in issue. Both cases involved the rights of guarantors of payment and both guarantors had the same interests at stake. More importantly, both statutes indicate a purpose to give interested parties notice of sale.
In the Armstrong case the court, without analysis of the Uniform Commercial Code, held that only the principal debtor and not the accommodation party was entitled to receive notice of the dispositional sale. (See A. J. Armstrong Co. v Janburt Embroidery Corp., 97 NJ Super 246, supra.) On the other hand, the court in the T & W Ice Cream, case (also New Jersey), carefully analyzed the relevant statutory provisions and then, after attempting to distinguish the Armstrong case, refused to follow it (T & W Ice Cream v Carriage Barn, 107 NJ Super 328, supra).
This court is of the opinion that the better rule is the one arrived at in the majority of jurisdictions and, accordingly, holds that a guarantor is a "debtor” within the meaning of section 9-105 (subd [1], par [d]) and subdivision (3) of section 9-504 of the Uniform Commercial Code and entitled to notice of the disposition of the collateral.
*90 The statutory language of the code also supports this view. Section 9-105 (subd [1], par [d]) does not require the "debtor” to be the owner or have rights in the collateral. The debtor is only required to be an "obligor in any provision defiling with the obligation.”
The purposes underlying subdivision (3) of section 9-504, to give all persons having an interest in the collateral notice of the disposition, would also appear to support this interpretation. Notice will provide the debtor an opportunity to bid at the sale, safeguard his right of redemption and permit him to reduce his potential liability by utilizing all practicable means of doing so (see Rushton v Shea, 423 F Supp 468, 469, supra; Marine Midland Bank-Rochester v Vaeth, 88 Misc 2d 657, 659-660; Wells v Central Bank of Ala., 21 UCC Rep Serv 1504 [Ala Civ App]; First Nat. Bank of Bellevue v Rose, 197 Neb 392, 397-398; 69 Am Jur 2d, Secured Transactions, §612, supra, Sachs and Belgrad, supra, 5 U Balt L Rev 159-160).
Because a guarantor should similarly be permitted to protect his rights, it is imperative for him to receive notice of the dispositional sale. Furthermore, a guarantor arguably has a greater need to protect his interests. Whereas he is liable for full payment upon the principal debtor’s default, he has only a conditional interest in the collateral (cf. Indianapolis Morris Plan v Karlen, 28 NY2d 30, 35; Barnett v Barnett Bank of Jacksonville, 345 So 2d 804 [Fla App], supra).
To require the secured party to give notice to the guarantor of the disposition of the collateral will not cause the creditor to suffer any prejudice, nor will it impose an undue burden upon him (see Sachs and Belgrad, supra, pp 165-166). Since the guarantee agreement is executed at the request of and for the benefit of the secured party, the identity and location of the guarantor are obviously already known to the creditor.
Shirley Natarelli argues that because she was not given the required notice personally, the bank did not comply with the notice requirements of the code.[5]
Subdivision (3) of section 9-504 requires that "reasonable notification of the time and place of any public sale * * * shall be sent by the secured party to the debtor”. While "sent” implies notice sent by mail, all it actually requires is actual or *91 constructive receipt of notice (see Crest Inv. Trust Inc. v Alatzas, 264 Md 571).
Section 1-201 (subd 25, par [c]) of the Uniform Commercial Code provides that a person has notice when he has actual knowledge, when he receives notification or when "from all the facts and circumstances known to him at the time in question he has reason to know that it exists.” (See, also, 1 Anderson, Uniform Commercial Code [2d ed], pp 113-114.) Furthermore, a person receives notice when it comes to his attention or is delivered at his place of business (Uniform Commercial Code, § 1-201, subd [26]). While personal notice is preferable and will be required in most instances (see, e.g., Uniform Commercial Code, § 1-201, subd [38]; De Lay First Nat. Bank & Trust Co. v Jacobson Appliance Co., 196 Neb 398, supra, 745; Hawkins v General Motors Acceptance Corp., 250 Md 146), it is apparent to this court that sufficient notice was given to Shirley for proper compliance with subdivision (3) of section 9-504 of the Uniform Commercial Code.
As she herself acknowledges, Shirley was the secretary of Glenwood, a small closely owned and family operated corporation (see Midwest Eng. & Constr. Co. v Electric Regulator Corp., 435 P2d 89 [Okla]; cf. Armstrong Co. v Janburt Embroidery Corp., 97 NJ Super 246, supra; Ann. 30 ALR 3d 9, 81-83). Indeed, she does not dispute the fact that in her capacity as an officer she acted with authority on behalf of Glenwood (see 12 NY Jur, Corporations, § 631; see, also, 2 NY Jur, Agency, §§ 139-142). She lived and worked with her husband, Mario, the chief officer of Glenwood (see 3 Merrill, Notice, § 1344). Mario, Shirley and Glenwood were at all times, and still are, represented by the same legal counsel throughout all of the proceedings (see Ross v Russell, 475 P2d 152 [Okla]). Mario and the same legal counsel had actual knowledge of the sale (cf. Hempstead Bank v O’Dee Equipment Sales Corp., 11 UCC Rep 222 [NY Sup Ct]; 3 Merrill, Notice, §§ 1208, 1315). Furthermore, the time and place of the sale was published in two newspapers (see Matter of Bishop, 482 F2d 381; United States v Pirnie, 339 F Supp 702; cf. General Phoenix Corp. v Cabot, 300 NY 87).
Based on all of these factors, notice of the dispositional sale must be inferred and imputed to Shirley (see Gateway Nat. Bank of Chicago v Saxe, Bacon & Bolan, 40 AD2d 653; Eldon’s Super Fresh Stores v Merrill Lynch, Pierce, Fenner & Smith, 296 Minn 130; 66 CJS, Notice, §§ 5, 6, 10). Accordingly, her *92 assertion that she did not receive notice lacks merit and her claim for damages based upon lack of notice is dismissed.
Lastly, Shirley’s claim, incorporated in her second affirmative defense and first counterclaim, that the disposition of the collateral was not "commercially reasonable”, also lacks merit. [Material omitted for purposes of publication.]
Accordingly, for all of the reasons set forth herein, Shirley’s answer, together with all affirmative defenses and counterclaims, is dismissed in all respects, with costs.

. The fact should be noted parenthetically that Shirley has annexed to her papers another appraisal prepared by Frank Natarelli in June, 1975.

. The fact is not clear which party was served first but this is inconsequential for the purposes of the present motions.

. Plaintiff took possession of the collateral in conjunction with the institution of the foreclosure action, but this was independent of any judicial process (Uniform Commercial Code, § 9-501, subd [4]).

. The term "debtor” is not defined by the statute (see Ga Code Ann, § 67-1505).

. The parties have not argued or raised any question concerning notice of the time and place of disposition and thus these matters are not before this court and are treated as concededly correct.