**CHEMLEASE WORLDWIDE INC., Respondent,**

v.

**BRACE, INC., et al., Appellants.**

**No. C9–82–1457.**

Supreme Court of Minnesota.

Sept. 23, 1983.

William C. Mortensen Law Offices, Minneapolis, for appellants.

Robert A. Judd, Minneapolis, for respondent.

KELLEY, Justice.

Respondent Chemlease Worldwide, Inc. (Chemlease), the lessor of personal property, sought a deficiency judgment against the lessee (Brace, Inc.) and two personal guarantors of the lessee's lease obligations (Charles and Clayton Brace) for the difference between the unpaid amount due it under the lease and the amount received following a repossession sale. Following trial, the court directed a verdict for the lessor. Subsequently, judgment was entered against the lessee and both personal guarantors. On appeal, appellants claim (1) that the lessor failed to give the lessee and personal guarantors reasonable notice of private sale, as required by the Uniform Commercial Code, and (2) that a directed verdict was inappropriate because there existed factual questions as to whether the private sale was commercially reasonable. We hold that the lessor's notice of private sale was unreasonable and that a jury issue exists as to whether the private sale of the leased equipment was commercially reasonable. Accordingly, we reverse and remand for retrial.

In October of 1975, Brace, Inc. entered into a 62-month lease for computer equipment with Chemlease. Monthly payments

were $500.48, for a total of $29,836.26 over the lease term. Brace, Inc. had an option to buy the equipment for $1 at the end of the lease. The price of the equipment was $20,-477.83. Contemporaneously with the execution of the lease, Charles and Clayton Brace executed personal guaranties of the lessee's payment obligation. In June of 1977, Brace, Inc. went out of business, but a business called Brace Company continued to do business at the former business address of Brace, Inc. Brace Company assumed and paid the monthly computer lease obligation. Chemlease was not informed of the change in lessee and did not consent to any assignment of the lease. The Brace Company, in turn, went out of business in the fall of 1977. However, the lease payments were made through October of 1978. In November of 1978, Chemlease was informed by Gamet Manufacturing (Gamet), the new tenant of the premises where the computer equipment was located, that the equipment had been left on the premises and requested disposition instructions.

After receiving this information from Gamet and because Brace, Inc. was in default on the lease, Chemlease's collection agent undertook steps to repossess the equipment. The agent testified that he contacted three companies who were potential buyers in the used computer market. Ultimately, sale terms were agreed to with Chicago Cash Register Company, one of those three potential buyers, on or about January 10, 1979. Chemlease's agent instructed Chicago Cash Register Company to pick up the equipment on February 2, 1979. On or about February 1, 1979, Chemlease sent all of the appellants two documents by certified mail: a final demand for payment and a notice of private sale. Notices sent to Brace, Inc. and Clayton Brace were returned without forwarding address. Charles Brace received and signed a receipt for both documents on February 7 and 8, 1979, respectively. The notice of private sale stated Chemlease would sell the equipment "on or after the 12th day of February, 1979." Meanwhile, the equipment had been picked up from Gamet on behalf of Chicago Cash Register Company by a trucking firm on February 2, 1979. Upon receiving the final demand and notice of private sale, neither Charles Brace nor the other appellants contacted Chemlease nor did they make an effort to find a buyer. On March 13, 1979, upon receipt of $2,500 purchase price, Chemlease gave Chicago Cash Register Company a bill of sale for the computer equipment.

Thereafter, Chemlease commenced the instant action against Brace, Inc. and against Clayton and Charles Brace as guarantors seeking a deficiency judgment. The appellants defended on the grounds Chemlease failed to provide reasonable notice of the private sale and that the sale was commercially unreasonable. At the close of the evidence, the trial court issued an order for directed verdict in favor of Chemlease for $10,406.95, the stipulated amount of the deficiency. Subsequently, the court issued findings of fact, conclusions of law and an order for judgment on which judgment was entered. Appellants appeal from the order granting the directed verdict and from the judgment.

In reviewing a trial court's order for directed verdict, this court makes an independent judgment about the appropriateness of the directed verdict. We accept as true all the evidence favorable to the party adverse to the motion and all reasonable inferences that can be drawn from the evidence. *Walton v. Jones,* 286 N.W.2d 710, 714 (Minn.1979).

1. The appellants first contend that they were not provided commercially reasonable notice of the private sale. The lease between Chemlease and Brace, Inc. provided that at the end of the lease period Brace, Inc. had the option to become the owner of the computer equipment for the nominal consideration of $1. Under the Uniform Commercial Code, the interest retained by Chemlease was a security interest. U.C.C. § 1–201(37).[1] Therefore, provi-

---

1. The lease provided New York law should ap-
ply to its construction. Citations in this opin-

sions of Article 9 of the Uniform Commercial Code would apply to the transaction.

■ As the secured party, Chemlease had, on default, a right to take possession of the computer equipment. U.C.C. § 9–503. Chemlease also had a right to dispose of the equipment, either by private or public sale, pursuant to section 9–504. Section 9–504(3) provides in part:

Unless collateral * * * is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

This provision entitled Brace, Inc., as debtor to the lease agreement, to receive reasonable notice of sale. But are Charles and Clayton Brace, as guarantors on the lease, also entitled to receive such notice? While we have not heretofore considered the question, the New York courts and a majority of jurisdictions addressing the issue hold that a guarantor is a debtor within the meaning of section 9–504. *See, e.g., Chase Manhattan Bank v. Natarelli,* 93 Misc.2d 78, 89, 401 N.Y.S.2d 404, 411 (N.Y.Sup.Ct.1977); *De-Lay First National Bank & Trust Co. v. Jacobson Appliance Co.,* 196 Neb. 398, 403, 243 N.W.2d 745, 748 (1976); *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803, 807 (Utah 1979). In our view, this construction is consistent with the purpose of the reasonable notification requirement, that is, to enable the debtor to protect his interest in the secured property by paying the debt, finding a buyer, or bidding on the property. *See, e.g., Fedders Corp. v. Taylor,* 473 F.Supp. 961, 976 (D.Minn.1979); *see also LeRoy v. Marquette National Bank of Minneapolis,* 306 N.W.2d 815, 817 (Minn.1981). A guarantor faces potential liability when the sale price does not cover the deficiency. Additionally, a personal guaranty given by

a primary participant in a family-owned corporation often means the guarantor is, in essence, the debtor. The view that a guarantor is a debtor under section 9–504 should be applied to Charles and Clayton Brace. Thus, we conclude they were entitled to receive notice of the proposed sale of the collateral.

■ Chemlease argues that by the terms of the guaranty the guarantors waived their rights to the collateral and therefore to notice of sale. It appears to us, however, that the fact the guarantors had no rights to the collateral is irrelevant to their interest in insuring Chemlease made the best sale available. The interest Charles and Clayton Brace have in the best sale price is their interest in their potential liability on the guaranty. The waiver in the guaranty does not waive any right to notice they may have under the Uniform Commercial Code. *See General Electric Credit Corp. v. Durante Bros. & Sons, Inc.,* 96 Misc.2d 561, 409 N.Y.S.2d 175 (N.Y.Sup.Ct.1978). Additionally, by virtue of section 9–501(3)(b), the provisions of section 9–504(3) may not be waived or varied by agreement. *See* Minn. Stat.Ann. § 336.9–504(3) Code Comment (West 1966).

■ Finally, Chemlease argues that Charles and Clayton Brace and Brace, Inc. are barred by estoppel or waiver from claiming the notice and sale were unreasonable because of their activities. Chemlease points out that Brace, Inc. assigned the lease of the equipment to Brace Company in violation of lease provisions and without notice to, or consent of, Chemlease. Additionally, the equipment was abandoned on the property occupied by Gamet when Brace Company went out of business. A violation of lease provisions regarding assignment of the lease would not waive Brace, Inc.'s interest in the property but would entitle Chemlease to any damages incurred by the violation. The abandonment of the computer equipment, like the alleged waiver in the guaranty, could only

ion will be made to the Uniform Commercial Code unless New York and Minnesota law differ.

constitute waiver of rights to the property, not the interest of the guarantors in seeing that the property is sold for the highest price.

2. The trial court found Charles Brace received reasonable notice of the private sale and that the notice provided by Chemlease to the other appellants was also reasonable. As indicated, notices sent to Clayton Brace and Brace, Inc. were returned without forwarding addresses. Appellants here argue notification provided by Chemlease was unreasonable on its face and in effect. They argue that Chemlease's disposition of collateral did not comply with the requirements of U.C.C. § 9–504(3) notification.

With regard to the question of whether the notification was commercially unreasonable on its face, an examination of the facts establishes the final demand letters were all apparently postmarked February 1, 1979. The notice of private sale letters were postmarked February 2, 1979. Charles Brace received the final demand letter on February 7, 1979, and the notice of private sale letter on Thursday, February 8, 1979. The notice of private sale stated the sale would be made on or after Monday, February 12, 1979. As received, the notice provided Charles Brace 2 working days to act to protect his interests.

The rule for determining whether notification under U.C.C. § 9–504(3) is reasonable is whether the notice was sent in sufficient time to enable those entitled to notice to take appropriate steps to protect their interest in the collateral. *See, e.g., Levers v. Rio King Land & Investment Co.,* 93 Nev. 95, 560 P.2d 917 (1977). A majority of the jurisdictions which have considered the matter hold that return of the letters mailed to Clayton Brace and to Brace, Inc. does not automatically make the notice unreasonable. *See, e.g., McKee v. Mississippi Bank & Trust Co.,* 366 So.2d 234 (Miss. 1979); *MFT Leasing v. Fillmore Products, Inc.,* 579 P.2d 924 (Utah 1978). A reasonable way to fulfill the purpose of the notification requirement, so as to protect debtors without placing an unduly onerous burden

on the secured party to hunt down and serve the debtor, is a rule that determines the reasonableness of notice by the secured party upon his proof that notice was dispatched within a commercially reasonable time prior to the date of private sale rather than on actual receipt of notice by the guarantors. *See, e.g., Commercial Discount Corp. v. Bayer,* 57 Ill.App.3d 295, 301, 14 Ill.Dec. 647, 372 N.E.2d 926, 930 (1978).

In the instant case, the notifications were mailed on February 1 or 2, 1979, to the former business address of Brace, Inc. and to Clayton Brace and to the home address of Charles Brace. These certified mailings were sent 10 days prior to the date after which, according to the notices, the private sale was proposed to be made. The Uniform Commercial Code provides no statutory period constituting commercially reasonable notification. Moreover, no notice period was provided in the lease for the computer equipment. We note that the case law is not very helpful in this area, especially since the reasonableness of the notification generally depends upon the collateral involved and other circumstances peculiar to each case. However, we conclude, in the absence of contrary evidence, that a mailing 10 days prior to the sale date does not per se appear commercially unreasonable. Accordingly, the burden of producing evidence of specific unreasonableness would shift to the appellants. At trial, they provided no evidence that prior to the proposed sale date they objected to the method or date of sale, attempted to restrain the sale by court order, attempted to find potential purchasers or made any other effort to protect their interests. Had the appellants initiated some protective action which they could not complete prior to the proposed sale date, such would be specific evidence that the notice was not commercially reasonable. *See Levers v. Rio King Land & Investment Co.,* 93 Nev. at 98, 560 P.2d at 919.

To constitute commercially reasonable notification, the letter containing the notice of sale must be properly addressed. *See generally North Carolina Na-*

*tional Bank v. Burnette,* 297 N.C. 524, 256 S.E.2d 388 (1979). Section 1–201(26) of the Uniform Commercial Code provides the following guidance:

A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when

\* \* \* \* \* \*

(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

Here, the letters of notice of private sale for Brace, Inc. and Clayton Brace were sent to the business address of Brace, Inc. at the time the lease of computer equipment was executed. Chemlease had not received from the Braces notice that they would receive such communications elsewhere. The notice letter to Charles Brace actually notified him. It appears to us the commercial reasonableness of the addresses to which Chemlease sent notification letters is established.

But in determining further whether the notice was commercially reasonable we must decide when the actual sale of the computer equipment to Chicago Cash Register Company occurred. Appellants argue that the sale actually occurred prior to the date of February 12, 1979—the proposed date of sale provided in the notice. They claim that the sale agreement with Chicago Cash Register Company was made January 10, 1979, and title to the equipment passed on February 2, 1979, when the computer equipment was picked up by a trucking firm on behalf of Chicago Cash Register Company after authorization of Chemlease. On the other hand, respondent asserts, and the trial court found, that the sale occurred on March 13, 1979, when the bill of sale passed.

■ Article 9 of the Uniform Commercial Code adopts a definition of "sale" as found in U.C.C. § 2–106(1). U.C.C. § 9–105(3). Section 2–106(1) provides that a sale "consists in the passing of title from the seller to the buyer for a price." Section 2–401 provides in part:

(1) \* \* \* Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite reservation of a security interest and even though a document of title is to be delivered at a different time or place; \* \* \*

\* \* \* \* \* \*

(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

(a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; \* \* \*.

Thus, if subsection 2 is applicable, it would dictate that title to the computer equipment passed to Chicago Cash Register Company at the time the goods were delivered to Chicago Cash Register Company's trucking agent on February 2, 1979. However, if subsection 3 is applicable, it would dictate that title passed on March 13, 1979, when the bill of sale was transferred by Chemlease to Chicago Cash Register Company. We must then determine which subsection is applicable to the factual situation in this case. In the official comments prepared under the auspices of the National Conference of Commissioners of Uniform State Laws, comment 4 to section 2–401 provides:

The factual situations in subsections (2) and (3) upon which passage of title turn actually base the test upon the time when the seller has finally committed himself

in regard to specific goods. Thus in a "shipment" contract he commits himself by the act of making the shipment. If shipment is not contemplated subsection (3) turns on the seller's final commitment, i.e. the delivery of documents or the making of the contract.

A "shipment" contract is the common name for a contract that obligates the seller merely to deliver the goods to a carrier. *See* 3 R. Anderson, Uniform Commercial Code § 2–401:36 (3d ed. 1983). A shipment contract is in contrast to a destination contract, which obligates the seller to deliver goods by means of the carrier to the destination. A third type of sales contract is one in which there is no physical delivery; that is, the goods are not moved. Anderson comments that this is the type of contract contemplated by subsection 3 of section 2–401. *Id.* § 2–401:42. *See Puamier v. Barge BT 1793*, 395 F.Supp. 1019, 1029 (E.D.Va. 1974) (subsection 3 applicable because vessels to be delivered were moored and not moved).

In the instant case, the computer equipment was moved from Minnesota to Illinois on February 2, 1979. The factual situation here of Gamet delivering the goods to a carrier hired by Chicago Cash Register Company most approximates a shipment contract. Accordingly, we hold that subsection 2 would apply and title would have passed "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." U.C.C. § 2–401(2). The last date at which Chemlease can argue that it completed its performance in this shipment contract is the date the goods were handed over to the carrier on February 2, 1979. Because title passed on February 2, 1979, the "sale" of the equipment, by definition, would have occurred on that date. Because the notices of the sale were not postmarked until February 2, 1979, the date the sale technically occurred, the notification appears to be unreasonable to all appellants because the notices were not sent in sufficient time to enable Brace, Inc. or its guarantors to take protective action.

3. We must next examine the remedy which those entitled to notification have since Chemlease's notification was unreasonable. Section 9–507(1) of the Uniform Commercial Code provides the following remedy:

> If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part.

Ordinarily, the damages recoverable for an improper disposition of collateral are the difference between the amount for which the secured party sold the collateral and the collateral's true market value at time of disposition. G. Gilmore, Security Interests in Personal Property, § 44.9.2 at 1258 (1965). The question of the market value of the computer equipment is a factual matter for determination by the jury. In the instant case, we note that little evidence was presented by either party on the value of the equipment. Consequently, the determination of which side had the burden of proving the value of the equipment is essential to deciding whether the trial court was correct in directing a verdict.[2] We conclude

---

**2.** Some jurisdictions have held that U.C.C. 9–507(1) is not a debtor's exclusive remedy against a wrongdoing secured creditor and that failure to comply with commercial reasonableness requirements may constitute an absolute bar to the secured party's recovery of deficiency. In our view, such a harsh remedy does not agree with the underlying assumption of Article 9 that good faith is common and bad faith is rare. *See* Comment, *The Deficiency Judgment*

*in Illinois and the Notice Requirements of UCC 9–504(3): Are Illinois Courts on the Right Track?*, 1981 S.Ill.U.L.J. 419, 433.

On the other hand, U.C.C. § 9–507(1) can be read to require the debtor to show the loss and that the loss would not have occurred but for the failure to comply with statutory commercial reasonableness requirements. The path we choose to follow of the proposed placement of

the same reasons for placing the burden upon the secured party to prove the commercial reasonableness of the notice of sale support placing the burden upon the secured party to prove a fair price was received despite lack of a commercially reasonable notice of sale. Generally in law, the party who stands to benefit from the establishment of the affirmative of a proposition of fact essential to a claim bears the burden of proof as to that proposition. *Fedders Corp. v. Taylor,* 473 F.Supp. at 972. Consequently, once the debtor establishes that the sale was commercially unreasonable because of failure to give commercially reasonable notice of sale and alleges an amount of loss incurred, it seems to us reasonable to require the secured party to prove that the debtor suffered less or no loss by the disposition. As is the case with the burden of proving the commercial reasonableness, once the secured party makes a prima facie case indicating the debtor did not suffer the damage alleged, the burden of persuasion but not the burden of proof would shift to the debtor.

In this case, the appellants allege the computer equipment was worth $10,000 to $12,000. The equipment sold for $2,500. Respondent presented testimony of its agent that the best offer received by Chemlease was $2,500 and that it was "a fair price under the circumstances." Neither side presented non-party expert testimony on the market value of the equipment at the time of disposition. The burden of proving its entitlement to the deficiency remained on Chemlease. The trial court's placing the burden on appellants to show the sale price was commercially unreasonable was misplaced. The reasonableness of the sale price to Chicago Cash Register Company was a close factual question. Considering the closeness of the factual question and that Chemlease had the burden of proving the commercial reasonableness of the sale, and accepting as true the

evidence favorable to appellants, the directed verdict against them was inappropriate.

Accordingly, we reverse and remand to the trial court for a new trial on the question of damages, if any, sustained by appellants under U.C.C. § 9–507(1).

Reversed and remanded.

---

burdens of proof in the text is an intermediary position and an equally acceptable construction of section 9–507(1). Fair price is an element of a commercially reasonable sale. It seems proper to place the burden of proof on the same party on this single factual issue as to both the commercial reasonableness issue and the damages question.