DAKOTA BANK & TRUST CO., FARGO, Plaintiff and Appellee,

v.

Jon GRINDE, Defendant and Appellant.

Civ. No. 870169.

Supreme Court of North Dakota.

April 18, 1988.

Lamb, McNair, Larson & Carlson, Ltd., Fargo, for plaintiff and appellee; argued by David J. Hauff.

Garaas Law Firm, Fargo, for defendant and appellant; argued by David A. Garaas.

GIERKE, Justice.

Jon Grinde appeals from a district court summary judgment holding him liable to the Dakota Bank and Trust Company, Fargo [Bank] for $52,005.13 plus interest as a guarantor of a corporate debt. We reverse and remand for further proceedings.

Grinde was the sole shareholder of C.J.'s, Inc. [C.J.'s]. In December 1983, C.J.'s executed a $95,000 promissory note to the Bank to renew various notes the corporation had with the Bank. That money was used to buy fixtures and other equipment for a bar and restaurant near Detroit Lakes, Minnesota, which C.J.'s was purchasing from Virgil Cummins pursuant to a contract for deed which had an original purchase price of $100,000, with approximately $50,000 remaining to be paid. The promissory note was secured by a security agreement covering the equipment on the premises, by a mortgage covering the real property, and by C.J.'s interest in the contract for deed. Grinde also executed a personal guaranty for the debt.

C.J.'s leased the bar and restaurant to Randy Johnson under a verbal agreement whereby Johnson would make the payments due to the Bank under the promissory note. According to Grinde, Johnson planned to purchase the bar and restaurant at a price that would extinguish C.J.'s debt to the Bank. Although it is disputed

whether a default occurred, the Bank subsequently "took over the security" from C.J.'s. At that time, according to Grinde, he had conversations with Jim Mattson, a loan officer at the Bank, and was led to believe that the Bank would handle the leasing of the property directly, including negotiating the purchase price with Johnson, and that the Bank "would be looking after [Grinde's] interest in its dealings with ... Johnson."

A short time later, the Bank apparently sold the building, lot, and all of the contents to Johnson at a price which was, according to Grinde, "far below market value." Grinde asserted by affidavit that the lot alone was worth $60,000 and that $50,000 worth of improvements were done on the premises at the time the promissory note was executed by C.J.'s. Grinde asserted that although he "is unaware of the true purchase price" that Johnson paid, he "believes that the amount received was approximately $12,000 above the remaining payments on the Contract for Deed for a total purchase price of approximately $62,-000. If the total amount the bank received was $62,000, it received only approximately one-half of what the property was worth." Grinde asserted that had the Bank merely kept the existing lease in effect, it would have been paid in full.

The Bank thereafter brought this suit against Grinde asserting that C.J.'s had defaulted on the promissory note and that Grinde, as the guarantor, was liable for approximately $50,000 representing the balance due and owing on the note plus interest. The Bank moved for summary judgment, asserting that under the terms of the guaranty, Grinde had waived all of his rights with respect to disposition of the collateral. The Bank's motion was accompanied by an affidavit of Jim Mattson which stated that after the promissory note was "past due," C.J.'s "turn[ed] over ... certain collateral involving both real and personal property" to the Bank and that the Bank sold the collateral. Mattson's affidavit also set forth the amount of the balance remaining due after applying the proceeds from the sale to the indebtedness.

Grinde responded to the motion with an affidavit alleging the facts set forth above.

The district court granted the Bank's motion, concluding that "there are no genuine issues as to any material facts and that the [Bank] is entitled to Judgment as a matter of law." Grinde has appealed.

Summary judgment is a procedural device available for the prompt disposition of a controversy without the necessity of trial when, viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833, 835 (N.D.1988). Summary judgment may also be granted when, although factual disputes exist between the parties, the law is such that resolution of the factual disputes will not change the result. *Russell v. Bank of Kirkwood Plaza*, 386 N.W.2d 892, 897 (N.D.1986).

Paragraph 7 of the guaranty signed by Grinde in this case provides in pertinent part:

"The liability of the undersigned [Grinde] shall not be affected or impaired by any of the following acts or things (which the Bank is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the undersigned): ... (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any modification, substitution, discharge, impairment, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; ..."

Although it is not clear from the district court's written order, an examination of the transcript of the hearing on the summary judgment motion reveals that the court ruled that Grinde had waived all of his rights with regard to the Bank's "enforcement of any collateral security," and

because Grinde was a guarantor rather than the principal debtor, these rights could be validly waived under the provisions of Chapter 41–09 [Article 9, Uniform Commercial Code], N.D.C.C.

Grinde asserts on appeal that even if the guaranty purports to waive all of his rights with regard to the disposition of the collateral, a guarantor is a "debtor" for the purposes of Article 9 and, consequently, before default he could not validly waive his right to notice of disposition of collateral or the Bank's duty to sell the collateral in a commercially reasonable manner [*see* §§ 41–09–47(3) [9–501] and 41–09–50(3) [9–504], N.D.C.C.],[1] or the Bank's duty to act in good faith [*see* § 41–01–02(3) [1–102], N.D.C.C.].[2] *See American State Bank of*

*Killdeer v. Hewson*, 411 N.W.2d 57 (N.D. 1987).

In *State Bank, Etc. v. All–American Sub, Inc.*, 289 N.W.2d 772, 779 (N.D.1980), we noted that there was a "split of authority" on the question whether a guarantor may waive notice of intended disposition of collateral prior to default, but declined to decide the issue. Since then, the Eighth Circuit Court of Appeals has been called upon to decide the issue from the standpoint of North Dakota's version of the Uniform Commercial Code. In *United States v. Kukowski*, 735 F.2d 1057, 1058–1059 (8th Cir.1984), the court noted that the issue was unsettled in this state and, relying upon the Ninth Circuit Court of Appeals' decision in *First Nat'l Park Bank v. John-*

---

**1.** Sections 41–09–47(3) [9–501] and 41–09–50(3) [9–504], N.D.C.C., provide:

"*41–09–47. (9–501) Default—Procedure when security agreement covers both real and personal property.*

\*　\*　\*　\*　\*　\*

"3. To the extent that they give rights to the debtor and impose duties on the secured party, *the rules stated in the subsections referred to below may not be waived or varied* except as provided with respect to compulsory disposition of collateral (subsection 3 of section 41–09–50) and with respect to redemption of collateral (section 41–09–52) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

"a. Subsection 2 of section 41–09–48 and subsection 2 of section 41–09–50 insofar as they require accounting for surplus proceeds of collateral.

"b. *Subsection 3 of section 41–09–50 and subsection 1 of section 41–09–51 which deal with disposition of collateral.*

"c. Subsection 2 of section 41–09–51 which deals with acceptance of collateral as discharge of obligation.

"d. Section 41–09–52 which deals with redemption of collateral.

"e. Subsection 1 of section 41–09–53 which deals with the secured party's liability for failure to comply with this part." [Emphasis added.]

"*41–09–50. (9–504) Secured party's right to dispose of collateral after default—Effect of disposition.*

\*　\*　\*　\*　\*　\*

"3. Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any

terms, but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale."

**2.** Section 41–01–02(3) [1–102], N.D.C.C., provides:

"*41–01–02. (1–102) Purposes—Rules of construction—Variation by agreement.*

\*　\*　\*　\*　\*　\*

"3. The effect of provisions of this title may be varied by agreement, except as otherwise provided in this title and except that the obligations of good faith, diligence, reasonableness, and care prescribed by this title may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable."

*son,* 553 F.2d 599 (9th Cir.1977), and giving "great weight" to the North Dakota federal district court's interpretation of our law, concluded that a guarantor could validly waive notice of the intended disposition of collateral in the guaranty agreement. With all due respect to the federal court, we reach a contrary conclusion.

The nonwaivable rights set forth under § 41–09–47(3) [9–501], N.D.C.C., are accorded only to a "debtor," which, for purposes of Article 9 secured transactions, is defined in § 41–09–05(1)(d) [9–105], N.D.C.C.:

> "*41–09–05. (9–105) Definitions and index of definitions.*
>
> "1. In this chapter unless the context otherwise requires:
>
>      \*      \*      \*      \*      \*      \*
>
> "d. 'Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the chapter dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires."

Under North Dakota law, a guaranty is "a promise to answer for the debt, default, or miscarriage of another person." § 22–01–01(1), N.D.C.C. It is a contract which, although separate and distinct from the contract imposing obligations on the principal, nevertheless imposes an obligation on the guarantor if the principal defaults in performance or payment. *See Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, 643 (N.D.1980). Because a guarantor becomes liable upon the principal's default, we believe that a guarantor qualifies as a "debtor" within the broad statutory definition in § 41–09–05(1)(d) as owing "payment or *other performance* of the obligation secured, whether or not he owns or has rights in the collateral." [Emphasis added.]

Practical considerations support this conclusion. Upon default by the principal, the guarantor becomes liable for any deficiency after sale and, consequently, has as much interest in protecting his rights during the sale or disposition of the collateral as does the principal. Denying guarantors the protections afforded to debtors under the Code would allow a secured party to circumvent the requirements of § 41–09–50(3) with impunity, thereby undermining the protective purpose of the statute. *See Connolly v. Bank of Sonoma County,* 184 Cal.App.3d 1119, 229 Cal.Rptr. 396, 399–400 (1986). Furthermore, requiring a secured party to give notice of disposition of collateral to the guarantor will not cause the creditor to suffer any prejudice or impose an undue burden upon him. Because the guaranty agreement is executed at the request of and for the benefit of the secured party, the identity and location of the guarantor are necessarily known to the creditor. *See McEntire v. Indiana Nat'l Bank,* 471 N.E.2d 1216, 1223–1224 (Ind.Ct. App.1984); *Chase Manhattan Bank, N.A. v. Natarelli,* 93 Misc.2d 78, 401 N.Y.S.2d 404, 412 (1977).

We recognize that in *Bank of Kirkwood Plaza v. Mueller, supra,* we held that guarantors do not fall within the meaning of "party or parties personally liable for that part of the debt" under § 32–19–06, N.D.C.C., of the anti-deficiency judgment statutes. That decision was premised on the distinction that the liability of a guarantor derives from the separate contract of guaranty rather than from the underlying note or mortgage. *Compare First State Bank of Cooperstown v. Ihringer,* 217 N.W.2d 857 (N.D.1974). However, we do not believe that *Mueller* dictates a holding that guarantors are not "debtors" for purposes of Article 9. The statutory definition of "debtor" under § 41–09–05(1)(d) is broader than the language used in the anti-deficiency judgment statutes. Moreover, treating a guarantor as a "debtor" is consistent with the overall scheme of Article 9 "to make distinctions ... along functional rather than formal lines." 3 U.L.A. Uniform Commercial Code § 9–101, Official Comment, at p. 64 (1981). Accordingly, a

guarantor should be considered a "debtor" within the meaning of Article 9 and be similarly protected despite having only a conditional interest in the collateral. *See McEntire v. Indiana Nat'l Bank, supra; Chase Manhattan Bank, N.A. v. Natarelli, supra.*

We find unpersuasive the relatively small number of cases taking a contrary view. Many of them, like *United States v. Kukowski, supra,* are federal court decisions involving Small Business Administration loan guaranties. *See, e.g., First Nat'l Park Bank v. Johnson, supra; United States, Etc. v. Kurtz,* 525 F.Supp. 734 (E.D. Pa.1981), *aff'd without opinion* 688 F.2d 827 (3d Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982). These cases appear to hold that a guarantor is a "debtor" entitled to raise the defenses in U.C.C. § 9-504(3), but that these defenses can be validly waived in the particular guaranty form supplied by the SBA. Not only does it seem illogical to accord the term "debtor" different meanings under U.C.C. § 9-501(3) and U.C.C. § 9-504(3), but it has also been noted that these cases are not particularly persuasive outside of a SBA loan guaranty context because there are special policy reasons for allowing waiver under those circumstances. "[T]he sweeping waiver of defenses language found in guaranty agreements with the Administration is enforced primarily because the public policy of the Administration is to protect the interests of small businesses and not those of individuals who serve as guarantors." *Tri–Continental Leasing Corp. v. Cicerchia,* 664 F.Supp. 635, 637 n. 2 (D.Mass.1987) [*citing United States v. Mallett,* 782 F.2d 302 (1st Cir. 1986)]. *See also* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 12.5[7][c], 1987 Cum. Supp. No. 3, at p. S12-25 ["[N]otions of federal immunity are always under the surface and may explain why federal courts are so willing to ignore the plain language of the UCC"].

Finally, when construing a statute which is part of a uniform law, we should construe it in a manner "as to effectuate its general purpose to make uniform the law of those states which enact it." § 1-02-13, N.D.C.C. *See also,* § 41-01-02(2)(c) [1-102], N.D.C.C. By adopting the view that a guarantor qualifies as a "debtor" under § 41-09-05(1)(d) and is unable to validly waive the protections of § 41-09-50(3) prior to default, we align ourselves with the substantial majority of courts which have considered the question. *See, e.g., Prescott v. Thompson Tractor Co., Inc.,* 495 So.2d 513 (Ala.1986); *Connolly v. Bank of Sonoma County, supra; First Nat'l Bank of Denver v. Cillessen,* 622 P.2d 598 (Colo.Ct. App.1980); *Barnett v. Barnett Bank of Jacksonville, N.A.,* 345 So.2d 804 (Fla.Ct. App.1977); *Branan v. Equico Lessors, Inc.,* 255 Ga. 718, 342 S.E.2d 671 (1986); *Liberty Bank v. Honolulu Providoring Inc.,* 65 Hawaii 273, 650 P.2d 576 (1982); *McEntire v. Indiana Nat'l Bank, supra; U.S. v. Jensen,* 418 N.W.2d 65 (Iowa 1988); *Shawmut Worcester County Bank v. Miller,* 398 Mass. 273, 496 N.E.2d 625 (1986); *Chemlease Worldwide Inc. v. Brace, Inc.,* 338 N.W.2d 428 (Minn.1983); *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W. 2d 106 (Mo.Ct.App.1981); *Borg–Warner Acceptance Corp. v. Watton,* 215 Neb. 318, 338 N.W.2d 612 (1983); *Chase Manhattan Bank, N.A. v. Natarelli, supra; Peck v. Mack Trucks, Inc.,* 704 S.W.2d 583 (Tex.Ct. App.1986). *See also* Annot., 5 A.L.R.4th 1291 (1981); 9 R. Anderson, *Uniform Commercial Code* § 9-504:42 (1985).

Having concluded that a guarantor is a "debtor" for purposes of Article 9, and as such, is unable to waive the protections afforded under § 41-09-50(3), it is clear that summary judgment was improperly granted in this case. In response to the Bank's motion, Grinde submitted an affidavit claiming that the $62,000 presumably obtained from the sale of the collateral was approximately one-half of the fair market value of the collateral. Inasmuch as an owner of property is fully competent to testify as to its value [*American State Bank of Killdeer v. Hewson,* 411 N.W.2d 57, 64 (N.D.1987)], and because the Bank has presented no evidence to rebut this assertion of commercial unreasonableness or to establish that either C.J.'s or Grinde

ever received notice of disposition of the collateral, we conclude that genuine issues of material fact exist which precluded the granting of summary judgment. Moreover, Grinde's allegations in his affidavit, when viewed, as they must be, in the light most favorable to him, permit at least a reasonable inference that the Bank did not proceed in good faith in this matter.

During oral arguments before this court the Bank asserted as an alternative basis for upholding the summary judgment that the Uniform Commercial Code is inapplicable in this case because the security agreement covered both real and personal property. Section 41-09-47(4) [9-501], N.D.C.C., provides:

"*41-09-47. (9-501) Default—Procedure when security agreement covers both real and personal property.*

\* \* \* \* \* \*

"4. If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply."

 The record does not reflect that this argument was specifically made to the district court, nor was it briefed in this court. Further, it is not that a security agreement covers both real and personal property, but the manner in which the secured creditor chooses to *proceed* against the collateral which may render the U.C.C. inapplicable in a particular transaction. *See State Bank of Towner v. Hansen*, 302 N.W.2d 760 (N.D.1981). The Bank's affidavit in support of the motion for summary judgment merely states that "certain collateral" was "turn[ed] over" to the Bank, which "did sell the collateral." Under Rule 56, N.D.R.Civ.P., the movant for summary judgment has the initial burden of showing that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to judgment as a matter of law on the facts shown. *See First State Bank of*

*Casselton v. McConnell*, 410 N.W.2d 139, 141 (N.D.1987); *Northwestern Equipment, Inc. v. Badinger*, 403 N.W.2d 8, 9 (N.D.1987). The Bank's affidavit is ambiguous regarding its method of disposing of the collateral and certainly does not establish that the U.C.C. is inapplicable as a matter of law.

Accordingly, the summary judgment is reversed and the case is remanded for further proceedings.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.