**UNITED STATES of America, Appellee,**

v.

**William J. KYTE, Appellant.**

No. 82–2051.

United States Court of Appeals, Eighth Circuit.

Feb. 25, 1983.

Rehearing Denied March 25, 1983.

Robert G. Ulrich, U.S. Atty., Larry D. Coleman, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Robert W. Brown, Dale H. Sizemore, Jr., Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Mo., for appellant.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Appellant William J. Kyte appeals from an order of the district court[1] granting the motion of the United States for summary judgment. We affirm.

On August 16, 1973, the Off Broadway Dinner Playhouse, Inc., borrowed $200,000 from Columbia Union National Bank and Trust Company of Kansas City, Missouri (now Centerre Bank) and executed a promissory note. Appellant was one of thirteen shareholders in Off Broadway. The United States Small Business Administration (SBA) guaranteed to repay ninety percent of the principal and interest on the loan in the event that Off Broadway defaulted. To further induce the bank to make the loan, each of the shareholders signed an SBA Standard Form Guaranty Agreement secured by his Off Broadway stock. The guaranty agreement signed by appellant and his wife provided in pertinent part:

[T]he undersigned hereby unconditionally guarantees to Bank, its successors and assigns and to the Small Business Administration (SBA) as its interests may appear, the due and punctual payment when due ... with respect to the note of the Debtor [Off Broadway] .... The term "collateral" as used herein shall mean any ... guaranties ....

... The undersigned hereby grants to Bank full power, in its uncontrolled discretion and without notice to the undersigned ... to deal in any manner with the Liabilities and the collateral, including but without limiting the generality of the foregoing, the following powers:

....

(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Bank upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Bank;

....

The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against Bank, by reason of any action Bank may take or omit to take under the foregoing powers.

....

This guaranty is limited to $40,000.

The $40,000 figure was arrived at on the basis of $2.00 of guaranty per share of Off Broadway stock to be distributed to appellant. This arrangement was set forth in Off Broadway's application to the SBA to obtain the SBA guaranty. Although Off Broadway had issued only 1,000 of its 100,000 shares of stock at the time appellant executed his guaranty agreement, the SBA application indicated that he would eventually receive 20,000 shares. The other shareholders' guaranty agreements were similarly limited and together with appellant's guaranty totaled $200,000.

The day after appellant signed the guaranty agreement, Off Broadway prepared a stock certificate in his name for 20,000 shares. On September 15, 1973, this stock certificate was canceled because it was issued in error. Appellant received a new certificate for 10,000 shares. Other shareholders' holdings were concomitantly adjusted. On October 11, 1973, appellant's stock ownership was reduced to 9,999 shares in order to give the three major stockholders a majority of the outstanding stock. The reverse side of appellant's guaranty agreement form listed as collateral securing the guaranty the 9,999 shares finally issued on October 11, 1973 rather than the 20,000

---

1. The Honorable John W. Oliver, United States Senior District Judge for the Western District of Missouri.

shares issued the day after the guaranty agreement was signed. None of the guaranty agreements were modified to reflect final stock ownership and preserve the two-to-one ratio of guaranty to stock contemplated in the SBA loan application.

■ When Off Broadway defaulted, the United States demanded payment from appellant on his $40,000 guaranty.[2] Appellant failed to pay and the government instituted this action to recover the indebtedness. Appellant alleged that when the parties entered into the guaranty agreement, they were laboring under a mutual mistake, thus rendering the agreement either void or subject to reformation. The mutual mistake, according to appellant, arose from Off Broadway's incorrect representation in its application to the SBA that appellant was entitled to 20,000 shares of Off Broadway stock when in reality he was only eligible to receive 10,000 shares. Because the amount of each shareholder's guaranty was supposed to be proportionate to final stock ownership, appellant claimed that the parties to the guaranty agreement intended that appellant's liability be limited to $20,000.

As further evidence that the parties' actual agreement was that each guarantor's liability was to be proportionate to his final stock ownership, appellant referred to the manner in which the SBA had dealt with another guarantor, Walter Bixby. Bixby had acquired the stock of five other shareholders and had assumed their obligations under their guaranty agreements. When Off Broadway defaulted, Bixby owned 66,-660 shares and was liable on five warranty agreements in face amounts totaling $120,-000. The SBA apparently disregarded the limitations on the face of the guaranty agreements and accepted without question Bixby's payment of $133,334 in satisfaction of his liability on the Off Broadway note, or $2 of guaranty for each share he owned.

We agree with the district court's determination that appellant is bound by the clear and unambiguous language of his guaranty agreement. "It is of course fundamental that the starting point for analy-

sis of the rights and duties of the parties to a guaranty agreement is the instrument itself." *United States v. Outriggers, Inc.,* 549 F.2d 337, 339 (5th Cir.1977). Appellant, however, claims that the guaranty agreement did not embody all the terms of the parties' contract. In appellant's view, Off Broadway's application to the SBA was a contemporaneous agreement that the district court should have construed together with the guaranty agreement to ascertain the intention of the parties. If the court had considered this extrinsic evidence, it could conclude that the parties intended that each guarantor's liability on the note was to be proportionate to his final stock ownership.

■ By the express terms of the guaranty agreement, appellant agreed to be unconditionally bound upon Off Broadway's default. Appellant did not condition his liability upon the execution of guaranties by other persons, nor did he provide in the guaranty agreement that his liability would be proportionate to his final stock ownership. Persons are bound by their unconditional written guarantees. *United States v. Glenn,* 585 F.2d 366, 368 (8th Cir.1978). *See United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). Furthermore, "[A] mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the written instrument, the preceding agreement must ex necessitate be shown." *Herhalser v. Herhalser,* 401 S.W.2d 187, 192 (Mo.App.1966). Yet, the "agreement" appellant relied upon was an *application* to the SBA by Off Broadway. This application was no more than "a simple supplication which neither unilaterally nor bilaterally bound anyone to anything." *Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 594 (Mo.App.1977). In addition, the manner in which SBA assessed other guarantors' liability does not, under the express terms of the agreement, affect appellant's legal liability.

Accordingly, we affirm the judgment of the district court.

---

2. At some point, the bank assigned the note to SBA.