**1084**

UNITED STATES of America, on Behalf
of the SMALL BUSINESS ADMINIS-
TRATION, Plaintiff,

v.

Arvid R. ANDRESEN and Margaret M.
Andresen and William Maynard South-
ard and Jean Southard, Defendants.

Civ. A. No. 82–0178–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

April 16, 1984.

Jennie Montgomery, Asst. U.S. Atty.,
Roanoke, Va., for plaintiff.

William E. Shmidheiser, III, Wharton, Al-
dhizer & Weaver, Harrisonburg, Va., for
defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The United States, on behalf of the Small
Business Administration ("SBA"), filed this
suit to recover on the defendants' guaranty
of a loan, now in default, assigned to the
SBA by the original lender, Planters Bank
of Bridgewater, Virginia. Two of the four
guarantors, William Maynard Southard and
his wife Jean, have paid over to the SBA
the deficiency remaining after the SBA
foreclosed upon the collateral securing the
loan; the Southards now assume the posi-
tion of seeking to recover this paid-over
deficiency on the basis of their counter-
claim filed in response to the government's
complaint. The other guarantors, Arvid
and Margaret Andresen, were named in the
government's complaint but have not been
successfully served.

This case came before the court on
March 7, 1984, for a bench trial. The court
deferred ruling on the government's mo-
tion to dismiss the Southards' counterclaim
until all the evidence was taken. Findings
of fact and conclusions of law will be con-
tained herein as required by Fed.R.Civ.P.
52(a).

The Southards executed the promissory
note for $191,700 at issue here on Septem-
ber 12, 1975. This note was secured by the
property of a business, R & S Investments,
and was guaranteed by the SBA. As a
further inducement for the making of the
loan to their business, the Southards exe-
cuted a guaranty. This guaranty agree-
ment (SBA Form 148 (8–71)) provides in
pertinent part:

The Undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, ... with respect to the note of the Debtor ... The term "collateral" as used herein shall mean any ... guaranties ...

... The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned ... to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

. . . .

(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Lender;

. . . .

The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action the Lender may take or omit to take under the foregoing powers.

. . . .

... Lender shall not be required, prior to any such demand on, or payment by, the Undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the liabilities or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral....

Subsequently, in 1977, the Southards sold R & S Investments to the other defendants named in this suit, the Andresens. The Andresens signed a similar guaranty for the note. The business experienced financial difficulty. The lender lent the business another $25,000 to provide operating capital; in order to induce this loan, the SBA and the lender agreed, without the Southards' consent, to subordinate the earlier note to this new loan and thus give this new loan a priority secured position. The business with this infusion of new capital nevertheless continued to have problems. The SBA, by this time having taken over the servicing of the note, attempted to work out the Andresens' problems by means of several steps. These measures included stretching out the payment period of the note, deferring payment of the principal, gaining the new financial resource of a Mr. Thomas Tucker, and permitting the sale of the Andresens' golf course property. This golf course property had been additional collateral taken by the lender for the original note when the business was sold to the Andresens. The proceeds from the sale of the golf course were injected into the business in this attempt to salvage R & S Investments as a going concern.

Ultimately, however, the infusion of capital into the business failed to have the intended effect; the business filed for bankruptcy. The Andresens defaulted. The SBA foreclosed on the property securing the note and made its demand for the deficiency on the guaranty signed by the Southards.

The Southards rely on three defenses to relieve them of their obligations under the guaranty they executed. First, they contend that they should be released from their guaranty because of the subordination of the original note to the second note after the sale of the business to the Andresens. Second, the Southards argue that they should be released because of the SBA's release of the golf course property, collateral for the original note. Finally, they assert that the SBA should be barred by its laches in pursuing the Andresens both before and after this suit was filed. These defenses will be addressed *seriatim*.

## A. Release by Subordination and by Release of Collateral

■ The Southards maintain that the SBA's permitting the subordination of the original note and the release of the golf course collateral demonstrates such bad

faith and willful misconduct that the contractual waiver contained in the guaranty agreement should not be given effect. The court finds neither bad faith nor willful misconduct. Rather, these actions appear to have been taken in order to breath life into a struggling business; to paraphrase Pope, "Hope springs eternal in the creditor's breast." The lender hoped to forestall default by the Andresens and to put the business in a profitable position.

Clearly, then, in the absence of any bad faith, the language in the guaranty agreement expressly waives any defense by the Southards based on subordination or release of collateral. The Southards expressly conceded to the lender the uncontrolled discretion "to deal with the Liabilities and the collateral". The case law is replete with examples of guarantors attempting to traverse this standard-form guaranty language; courts uniformly uphold the waiver of defenses language. *See e.g., United States v. Kyte*, 705 F.2d 967, 969 (8th Cir. 1983); *United States v. Southern Cycle Accessories, Inc.*, 567 F.2d 296, 297 (5th Cir.1978); *United States v. Outriggers, Inc.*, 549 F.2d 337, 339 (5th Cir.1977); *United States v. Kurtz*, 525 F.Supp. 734, 745–48 (E.D.Pa.1981) *aff'd mem.*, 688 F.2d 827 (3d Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *United States v. Houff*, 202 F.Supp. 471, 475–76 (W.D. Va.), *aff'd*, 312 F.2d 6 (4th Cir.1962). Similarly, with no showing by the Southards of bad faith or willful misconduct, this court holds that the Southards may not rely on these defenses.

B. *Laches*

The Southards additionally contend that SBA officers failed to pursue the Andresens with due diligence when the Andresens became delinquent in their payments. Further, they allege that the SBA has been less than diligent in pursuing its judicial remedies against the Andresens. While the court has sympathy for the Southards, who have been left vulnerable on their guaranty, the court observes that not only does the guaranty expressly permit the SBA to pursue only one guarantor—in this case the only apparently solvent and easily available one—but that the defense of laches is not generally available to be used against the United States. *United States v. Summerlin*, 310 U.S. 414, 416–17, 60 S.Ct. 1019, 1020–21, 84 L.Ed. 1283 (1940); *Chevron, U.S.A., Inc. v. United States*, 705 F.2d 1487, 1491 (9th Cir. 1983); *Roberts v. Morton*, 549 F.2d 158, 163–64 (10th Cir.1976), *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977); *United States v. West*, 299 F.Supp. 661, 664 (D.Del.1969). In this case, the government is in the position of a creditor attempting to protect the public fisc. This case thus falls squarely within this well-settled law.

Moreover, the court finds that the SBA acted with relative celerity in pursuing its judicial remedies. The Southards concede that the SBA acted within the relevant statute of limitations period in bringing suit to recover on its deficiency. Any delays were occasioned by the proceeds from the foreclosure sale being held by the commissioner of accounts pursuant to Virginia law,[1] a circumstance clearly beyond the SBA's control. In sum, the facts adduced at the trial of this case do not support a laches defense, even if available against the government in exceptional circumstances. No exceptional delay or other egregious behavior by the SBA was brought to light.

An appropriate Order shall this day issue.

## ORDER

For the reasons stated in an accompanying Memorandum Opinion, it is hereby

### ADJUDGED AND ORDERED

as follows:

1. Judgment shall be, and it hereby is, entered for the plaintiff United States of

---

1. *See* Va.Code §§ 26–8 to 26–37.

America and against the defendant South-ards.

2. This case shall be, and it hereby is, dismissed and stricken from the docket of this court.