UNITED STATES of America,
Plaintiff, Appellee,

v.

Ernest J. MALLETT, Jr. and Janet L.
Mallett, Defendants, Appellants.

No. 85–1477.

United States Court of Appeals,
First Circuit.

Argued Oct. 11, 1985.

Decided Jan. 28, 1986.

Marc R. Scheer, Concord, N.H., with whom Robert L. Chiesa, William S. Gannon and Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., were on brief for defendants, appellants.

Bruce E. Kenna, Asst. U.S. Atty., with whom Richard V. Wiebusch, U.S. Atty., Concord, N.H., were on brief for plaintiff, appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and HILL,* Senior District Judge.

TORRUELLA, Circuit Judge.

We have before us the appeal from a summary judgment granted in a collection action brought under 28 U.S.C. § 1345. The District Court for the District of New Hampshire found defendants/appellants Ernest and Janet Mallett liable to the Small Business Administration (SBA) for over $132,000 due on a defaulted loan for which they signed a personal guaranty. The undisputed facts reveal that in November 1973, Linderhoff Resorts, Inc. borrowed $111,900 from the SBA. The appellants, along with other individuals, executed a

* Of the Central District of California, sitting by    designation.

personal guaranty on a standard SBA guaranty form, Form 148, to secure Linderhoff's loan. Over the next several years, Linderhoff was often delinquent in its loan repayment. It finally ceased making payments altogether at the end of 1977. Prior to that time, however, while payments were still being made, the SBA released portions of the collateral. In November 1978, the agency demanded repayment in full, invoking the acceleration clause of the promissory note signed at the time the loan was made. Shortly thereafter, Linderhoff filed a bankruptcy petition. Under the bankruptcy proceedings, Merchants Savings Bank, the holder of the first mortgage, sold the remaining real estate security at a foreclosure sale. The SBA, without proceeding against the other guarantors, filed suit against the Malletts to enforce their guaranty agreement.

In an effort to avoid a summary judgment against them, appellants alleged several issues of material fact which they claim form the basis for affirmative defenses. The district court found the defenses meritless. It held that the "issues" of fact were immaterial because, in light of the clear language of the guaranty agreement, appellants had waived the various rights they sought to claim.

■ The Malletts, on appeal, have raised basically the same issues which they brought before the district court. They allege that the SBA's conduct violated the guaranty's limitation on the SBA's control over the security. They claim that the agency unreasonably delayed in pursuing its remedies against Linderhoff, failed to notify them of the serious nature of the default in time for them to take appropriate corrective action, failed to pursue other available remedies, altered materially the terms of repayment of the debt, failed to participate in the foreclosure proceedings, and made other decisions of a similar nature which constitute mismanagement.

We must agree with the district court that the express language of the guaranty agreement specifically bars the defenses raised. (See Appendix). Appellants do not argue that there are any ambiguities in the language used. The case law is replete with examples of guarantors attempting to traverse this standard-form guaranty language. The courts, however, have uniformly upheld the "waiver-of-defenses" language. *See, e.g., United States v. Andresen,* 583 F.Supp. 1084 (W.D.Va.1984); *United States v. Kyte,* 705 F.2d 967, 969 (8th Cir.1983); *United States v. Southern Cycle,* 567 F.2d 296, 297 (5th Cir.1978); *United States v. Outriggers, Inc.,* 549 F.2d 337, 339 (5th Cir.1977); *United States v. Kurtz,* 525 F.Supp. 734, 745–48 (E.D.Pa. 1981), *aff'd* mem. 688 F.2d 827 (3d Cir. 1982); *United States v. Houff,* 202 F.Supp. 471, 475–76 (W.D.Va.), *aff'd,* 312 F.2d 6 (4th Cir.1962).

■ Appellants argue that the SBA did not deal with the security "as permitted by law" after the default occurred. They allege that they were mislead concerning the SBA's intention to bid at foreclosure, and the failure of SBA to actually enter the bidding, thereby, allowing the property to be sold for a grossly inadequate amount, and the release of collateral exceeded what the SBA was permitted by law to do. The district court correctly dealt with the first two points:

"Defendants fail to make out any 'reasonable reliance' upon a 'definite representation' by a governmental agent. *See Heckler v. Community Health Services,* [467] U.S. [51], 104 S.Ct. 2218, 2223 [81 L.Ed.2d 42] (1984). First even accepting defendant Ernest Mallett's affidavit assertions as true, the SBA indicated that 'it appeared as if the SBA was going to bid at the foreclosure sale and that said representative did not feel as though I had anything to worry about inasmuch as the SBA bid was going to cover its mortgage interest in the property and the debt owed at the time by the Borrower.' Such a conditional, tentative statement does not rise to the level of a promise or definite assertion of future conduct which might lead a reasonable man to forego attending the sale and protecting his own potentially adverse

interests. Second defendants could not reasonably rely upon the statement of the SBA administrative officer as a reliable indicator of SBA's future conduct or as a release of defendants guaranty obligation, inasmuch as the law expressly states that only the Administrator of SBA may 'compromise ... all claims against third parties assigned to the Administrator in connection with loans by him.' Title 15, U.S.C., § 634(b)(4). *See United States v. Gilmore,* 698 F.2d 1095, 1098 (10th Cir.1983); *United States v. R & D One Stop Records, Inc.,* 661 F.2d 433, 434–45 (5th Cir., 1983)."

*United States v. Mallett, Jr.,* No. 84–392–D, slip op. at 10–11 (D.N.H. April 1, 1985) (Devine, C.J.).

As also pointed out by the district court, the real estate in question was encumbered with two prior mortgages totaling over $300,000. Even without considering the appellants' clear waiver under the guaranty of any right in the collateral, the SBA's failure to bid on the property was reasonable. Bidding the full value of its mortgage would not have given the agency title to the property. Had the property sold for an amount anywhere near what the Mallett's believed it to be worth, or even an amount greater than the superior liens, the SBA would have recovered some of its debt from the proceeds of the sale. The fact that six months later the property sold for $130,000 or about $50,000 in excess of the amount paid at foreclosure, indicates that the SBA would still not have collected anything on its loan had it been originally sold for that amount at foreclosure. The losses were suffered by the primary mortgages holder, who organized and directed the original foreclosure sale. Moreover, appellants do not challenge the manner in which that sale was organized, promoted and held, and it is such challenges which serve as the basis for the cases that appellants cite regarding the commercial reasonableness exercise of power to the extent permitted by law. *See, e.g., United States v. Willis,* 593 F.2d 247 (6th Cir.1979); *United States v. Conrad Publishing, Co.,* 589 F.2d

949 (8th Cir.1978); *United States v. Terrey,* 554 F.2d 685 (5th Cir.1977).

■ The Malletts additionally argue that the district court incorrectly limited its analysis and application of the commercial reasonableness test to the conduct of the parties participating in the bankruptcy foreclosure sale. It is alleged that the court failed to consider facts relating to the SBA's history of management of the collateral in terms of commercial reasonableness. Appellants suggest that under *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), we can look to local law of the forum for guidance on debtor-creditor relations and collateral liquidation. They invoke the commercial reasonableness standard of the Uniform Commercial Code Sections 9–501(3) and 9–504(3) as adopted by New Hampshire in RSA 382–A:9–501(3) and RSA 382–A:9–504(3), to support their contention that the SBA's release of collateral throughout the years prior to default is subject to that standard.

An analysis of whether the state law is applicable is unnecessary, however. The cases to which appellants direct our attention, requiring the SBA to act in a commercially reasonable manner, all involve the sale of a security after default. The court in *United States v. Cain,* 736 F.2d 1195, 1198 (7th Cir.1984), summed this up most succinctly: "In actions on guaranties of SBA loans involving defenses other than unreasonable sale after default by the SBA, the courts have not imposed a duty of commercial reasonableness."

Evidence supporting this interpretation of Article 9 of the UCC, regardless of the state in which it was adopted, as well as the SBA provision, can be found in many other circuits. *See, e.g., United States v. Warick,* 695 F.2d 1063 (7th Cir.1982); *United States v. Conrad,* 589 F.2d 949 (8th Cir.1978); *United States v. Terrey,* 554 F.2d 685, 693 (5th Cir.1977); *United States v. Willis,* 593 F.2d 247 (6th Cir.1979).

As the court noted in *Cain, supra,* at 1198–99:

"The SBA's primary interest in its loaning activities is not to protect the guarantors, but to assist the small businesses in their efforts to borrow money. Among the enumerated policies of the Aid to Small Business Act is 'that the Government should aid, counsel, assist, and protect insofar as possible, the interests of Small Business concerns in order to preserve free competitive enterprise....' 15 U.S.C. § 631 (1976). The SBA's primary interest, then, was not the protection of appellants, but the assurance that [debtor] could continue its operations."

In an effort to achieve its goals, the SBA has formulated a clear, unambiguous guaranty form which allows it to pursue its purpose as unobstructed from outside interference as possible. It is unfortunate that the appellants, like so many guarantors in other cases, failed to consider possible ramifications of the document they were about to sign. When they granted the SBA "uncontrolled discretion" to administer the loan agreement and collateral, the Malletts subrogated their own best interests to those of the parties to the loan agreement.

*Affirmed.*

### APPENDIX

In pertinent part, the SBA guaranty form reads:

The Undersigned waives any notice of the incurring by the Debtor at any time of any of the liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generally of the foregoing, the following powers:

(a) To modify or otherwise change any terms of all or any part of the Liabilities....

(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;

(c) ...

(d) To consent to the substitution, exchange, or release of all or any part of the collateral,....

(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.

The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.

In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the

Undersigned. Lender shall not be required, prior to any such demand on, or payment by, the Undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the Liabilities or the collateral unless and until Lender shall have received full payment of all the Liabilities.