TRI–CONTINENTAL LEASING CORPORATION, Plaintiff,

v.

Anthony P. CICERCHIA, Freddy A. Cicerchia, Richard A. Gordon, Turn-Key Distributor Systems, Inc., Ronald A. Mini, Ronald A. Wysocki, and Lynda E. Mini, Defendants.

Civ. A. No. 85–4163–Y.

United States District Court, D. Massachusetts.

June 19, 1987.

Russell Chin and Howard B. Cloth, Phillips, Cloth & Branson, Boston, Mass., for plaintiff.

Robert Loventhal, Loventhal & Shamban, Braintree, Mass., for Richard Gordon.

Kevin Keating, Boston, Mass., for Turn-Key Distributor Systems, Inc., Mini and Wysocki.

Evan Lawson and William Coyne, Jr., Lawson & Wayne, Boston, Mass., for Cicerchia.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

■ This case is before the Court on unrelated cross motions for summary judgment and partial summary judgment.[1] For the reasons given below, both motions are denied.

### THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Tri-Continental Leasing Corporation ("Tri-Continental"), moved for summary judgment on the ground that the defendants, Anthony Cicerchia, Freddy Cicerchia, and Richard Gordon, as guarantors of an equipment lease entered into between Tri-Continental and Beverages International, Inc. ("Beverages"), are absolutely liable for the amount owed on the lease as a result of Beverage's default. It is undisputed that, after the default, Tri-Continental sold the equipment which served as collateral for the lease but the amount real-ized from the sale did not eradicate Beverage's debt. Tri-Continental has brought the present action against these defendants to recover this deficiency.

In opposing Tri-Continental's motion, the defendants asserted in their initial brief that, first, the lease is a secured transaction governed by Article 9 of the Uniform Commercial Code ("Code"), second, that a guarantor is a debtor under Article 9 of the Code and, third, as guarantors they are entitled to invoke the defense of commercially unreasonable practices in connection with the sale of the collateral. Specifically, the defendants allege that Tri-Continental failed to give them notice of the sale and that the equipment was sold for less than it was worth. In support of this position, the defendants relied primarily upon Massachusetts decisions, apparently assuming that Massachusetts law governs in this particular situation.

■ The defendants, however, were relying upon an erroneous assumption, as Tri-Continental was quick to point out in a supplemental brief, since both the lease and the guaranty agreements state that the law of New Jersey shall govern. While ultimately, under the New Jersey conflict of law rules, the law of another state may control, *see Royal Store Fixture Co. v. New Jersey Butter Co.*, 114 N.J. Super. 263, 267, 276 A.2d 153 (App.Div.1971) (setting forth "most significant relationship" standard for secured transactions), the law of New Jersey must be looked to initially in determining the rights of the parties.

■ Tri-Continental went on to argue that, even if the defendants were entitled to invoke the defense of commercially unreasonable practices, this defense had been waived in the guaranty agreements signed by the defendants. In support of this position, Tri-Continental relied upon the decisions of federal courts involving guarantors who enter into guaranty agreements with the Small Business Administration

---

1. The defendants initially moved for judgment on the pleadings. However, pursuant to Federal Rule of Civil Procedure 12(c), the plaintiff, Tri-Continental, requested that the defendants' motion be considered as one for summary judg-ment. As Tri-Continental has supplied material outside the pleadings and this material has not been excluded by the Court, the defendants' motion for judgment on the pleadings will be treated as a motion for summary judgment.

("Administration"). *See, e.g., United States v. Mallett,* 782 F.2d 302 (1st Cir. 1986) (collecting cases); *United States v. Kurtz,* 525 F.Supp. 734 (E.D.Pa.1981), *aff'd,* 688 F.2d 827 (3d Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982). In those cases it was held that, even though a guarantor might well be entitled to assert the commercially unreasonable practices defense generally, this defense had been waived in the particular guaranty form supplied by the Administration. Tri-Continental argues that the language contained in the guaranty agreements signed by the defendants in the instant case is similar to the language contained in the Administration guaranty and the federal cases are therefor persuasive.[2]

The defendants responded to Tri-Continental's argument that all defenses had been waived by a further brief relying upon the Massachusetts decision in *Shawmut Worcester County Bank, N.A. v. Miller,* 398 Mass. 273, 496 N.E.2d 625 (1986), a case which analyzes this issue thoroughly. In that decision, the Massachusetts Supreme Judicial Court held that a guarantor is a debtor under Article 9 of the Code, *id.* at 278, 496 N.E.2d 625, and that a guarantor cannot waive Article 9 defenses prior to default. *Id.* at 280, 496 N.E.2d 625. With respect to the guarantor issue, the court noted that a majority of the jurisdictions which have construed the definition of the term "debtor" have decided that the term includes guarantors as well as other obligors. With respect to the waiver issue, the court stated that, although there are decisions on both sides of the issue, the better course is to hold that a waiver, prior to default, is precluded. *Id.*

With the briefing in this posture, the cross motions came on for oral argument.

At this point, with both sides in apparent agreement that the law of New Jersey governs, counsel turned to that body of law with a vengeance. Tri-Continental cites *A.J. Armstrong Co. v. Janburt Embroidery Corp.,* 97 N.J. Super. 246, 234 A.2d 737 (Law Div.1967) as standing for the proposition that a guarantor is not a debtor under Article 9 of the Code in New Jersey. The defendants cite *T. & W. Ice Cream, Inc. v. Carriage Barn, Inc.,* 107 N.J. Super. 328, 332–33, 258 A.2d 162 (Bergen County Ct. 1969) as standing for the opposite proposition. The Court took the matter under advisement.

Thereafter, on March 13, 1987, the Appellate Division of the New Jersey Superior Court decided *Lenape State Bank v. Winslow Corp.,* 216 N.J. Super. 115, 523 A.2d 223 (App.Div.1987). *Lenape State Bank* involves an Administration guaranty and, to that extent, is inapposite with respect to the instant case. *See supra* note 2. Nevertheless, the same issues raised in the instant case were raised there, namely, whether a guarantor is a debtor under Article 9 of the Code in New Jersey and whether, under Article 9 in New Jersey, the defense of commercially unreasonable practices can be waived prior to default. N.J. Stat.Ann. §§ 12A: 9—105(1)(d),—504(3). While *Lenape State Bank* did not decide these issues, holding that New Jersey real property law applied and not the Uniform Commercial Code, it does confirm that they remain unresolved in New Jersey. As stated by the court, "These questions have not yet been addressed in New Jersey nor will they be here." 216 N.J.Super. at 130, 523 A.2d 223.

Consequently, this Court must try to predict how the New Jersey Supreme Court will resolve these issues when confronted

**2.** Upon reflection, this Court concludes that Tri-Continental places undue reliance upon this line of cases for a variety of reasons. First, it ought be noted that these cases hold that a guarantor is a debtor under Article 9 of the Code, *United States v. Kurtz,* 525 F.Supp. at 745, and therefore, as a general rule, able to avail himself of the commercially reasonable sale defense. Second, the instant case is governed by state, not federal, law as it does not involve an Administration guaranty. Third, as stated in *Mallett,* guarantors are generally able to waive all defenses except those dealing with the sale of the collateral. *United States v. Mallett,* 782 F.2d at 304. Fourth, the sweeping waiver of defenses language found in guaranty agreements with the Administration is enforced primarily because the public policy of the Administration is to protect the interests of small businesses and not those of individuals who serve as guarantors. *Id.* at 305.

with them. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Erie Castings Co. v. Grinding Supply, Inc.,* 736 F.2d 99 (3d Cir.1984); *see Warren Bros. Co. v. Cardi Corp.,* 471 F.2d 1304, 1307–08 (1st Cir.1973) (applying predictive approach).[3] First, however, this Court must consider whether the lease in question is a secured transaction. N.J. Stat.Ann. § 12A: 1—201(37); *BSL Leasing Corp. v. Whittington, Singer, Davis and Co.,* 204 N.J.Super. 314, 498 A.2d 1262 (App.Div.1985). This is an important threshold issue since were the lease not considered a secured transaction, all arguments regarding the defenses available under Article 9 are moot. As mentioned above, the defendants have argued that the lease is governed by Article 9. Tri-Continental, on the other hand, has never directly addressed this issue. In considering Tri-Continental's motion for summary judgment, however, all inferences must be indulged in favor of the nonmoving party, *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d 985, 986 (1st Cir.1983), in this case the defendants. This Court will therefore assume, for the purposes of this motion only, that the lease in question is governed by Article 9.[4]

Turning now to the central guarantor and waiver issues, this Court, in attempting to predict how the New Jersey Supreme Court will decide these matters "may 'consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Kifer v. Liberty Mutual Insurance Co.,* 777 F.2d 1325, 1329–30 (8th Cir. 1985) (quoting *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 [1980]).

For the reasons discussed below, this Court rules that the New Jersey Supreme Court will hold that a guarantor is a debtor under Article 9 of the Code in New Jersey and that Article 9 defenses cannot be waived prior to default.

First, the language of the Code itself in dealing with the rights of debtors under Article 9 specifically states that Article 9 defenses cannot be waived prior to default. N.J.Stat.Ann. § 12A:9—504(3). This Court is persuaded by the considered analysis of the Massachusetts Supreme Judicial Court in *Shawmut,* that the better course is to hold that guarantors, like debtors, cannot waive Article 9 defenses prior to default. The cases cited by Tri-Continental in which waiver is allowed are not persuasive as they are concerned with the Administration guaranty and, as stated by the court in *Mallett,* there are special policy considerations for allowing waiver in these cases, namely, to protect small businesses and not individual guarantors. *Mallett,* 782 F.2d at 305; *see supra* note 2.

Second, though the indications are scant, the jurisprudence of trial courts in New Jersey appears to favor this result. The case cited by the defendants, *T. & W. Ice Cream,* is the more recent of the precedents relied upon by the parties and it specifically states that a guarantor is a debtor under Article 9 of the Code in New

---

**3.** The Court notes that this case presents novel state law issues of statutory interpretation. It is the nature of our federal system that federal courts often are called upon to declare and apply the law of a distant state, even though the federal court cannot lay claim to any particular insight into the state's law. To further the salutary goal of leaving the development of a state's law to its own courts in the first instance, at least 24 states have adopted procedures by which a federal court can certify controlling questions of law to the state's supreme court. See Federal Judicial Staff Paper, *Certifying Questions of State Law; Experience of Federal Judges,* (copy on file at National Center for State Courts). It is unfortunate that New Jersey does not have such a certification procedure, for it

cannot be that the values and interests of the citizens of New Jersey are best served by having a federal court in Massachusetts decide these unsettled questions of New Jersey law in the first instance. *See Piligian v. United States,* 642 F.Supp. 193, 195 n. 1 (D.Mass.1986) (same observation made with respect to the lack of a certification procedure under Virginia law).

**4.** As discussed below, Tri-Continental's motion must be denied without prejudice. Therefore, Tri-Continental is not estopped from arguing at a later time that the lease is not a secured transaction governed by Article 9 of the Code in New Jersey.

Jersey. 107 N.J.Super. at 333. The case cited by Tri-Continental, *Armstrong,* never directly addresses the issue. Instead, the *Armstrong* court assumed that only the debtor and not the guarantor was entitled to notice of default. If the holding of *Armstrong* was that a guarantor is not a debtor under Article 9 of the Code in New Jersey, then the *T. & W. Ice Cream* court chose not to follow it.

Third, as stated by the Massachusetts Supreme Judicial Court in *Shawmut,* a majority of the jurisdictions that have construed the definition of the term "debtor" have concluded that the term encompasses guarantors; and, as stated by the court in *Armstrong,* "[I]t should also be noted that the policy of the New Jersey Legislature in adopting the Uniform Commercial Code is that the courts of this State are to consciously attempt to give the Code a uniform interpretation not only as between our courts but also with those of other states whenever possible.... Therefore sister-state interpretations of the Code are more than persuasive authority." *A.J. Armstrong,* 97 N.J.Super. at 259, 234 A.2d 737. Uniformity of the commercial law throughout the United States will best be achieved by holding that a guarantor is a debtor for purposes of Article 9 and is, therefore, unable to waive Article 9 defenses prior to default.

■ In light of the ruling made above, the defendants have the right to raise the defense of commercially unreasonable practices and there thus emerges a genuine issue of material fact as to the way in which Tri-Continental disposed of the equipment which served as collateral for the lease. Accordingly, Tri-Continental's motion for summary judgment is denied without prejudice.

## THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

■ The defendants Anthony Cicerchia, Freddy Cicerchia, and Richard Gordon move for partial summary judgment [5] on the ground that the plaintiff, Tri-Continen-tal, in the civil RICO count of its complaint, failed to sufficiently allege a "pattern of racketeering activity" as required under 18 U.S.C. § 1962. In the memorandum in support of their motion, the defendants argue that, particularly after the United States Supreme Court's decision in *Sedima S.P. R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), one scheme to defraud, which is what Tri-Continental alleged in its complaint, does not satisfy the pattern requirement. This is so, according to the defendants, because one scheme does not constitute continuous criminal activity and, as stated by the Supreme Court in *Sedima,* continuity is one of the elements necessary to satisfy the pattern requirement. In support of their position, the defendants cite one post-*Sedima* circuit court opinion, *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986), and a group of district court opinions arising out of the Southern District of New York, *see, e.g., Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198 (S.D.N.Y. 1986), *disapproved, United States v. Ianniello,* 808 F.2d 184, 192 n. 15 (2d Cir.1986), in which it has been held that one scheme failed to satisfy the pattern requirement. The courts are by no means uniform in their approach to civil RICO claims in which a single scheme to defraud is alleged. Some courts have held that, under certain circumstances, one scheme to defraud does constitute continuous criminal activity. *See, e.g., Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986). The First Circuit Court of Appeals has refused to adopt a definition of "pattern" which relies solely upon whether the activity can be classified as a single scheme or episode. *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22 (1st Cir.1987). In *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532 (D.Mass.1986), the court held that the particular single scheme failed to satisfy the pattern requirement. Nevertheless, the court stated,

This court is not prepared to rule that, as a matter of law, one scheme to defraud

---

**5.** *See supra* note 1.

may not constitute a pattern of racketeering activity, no matter how many underlying acts of mail or wire fraud may be involved. There are single schemes to defraud that, because of their scope, duration, and separate and varied use of the mail or telephones, present the threat of continuing criminal activity. The standard adopted in [*Mullin & Associates, Inc. v.*] *Basset* [632 F.Supp. 532 (D.Del.1986) ] and *Kredietbank* [*v. Joyce Morris, Inc.* CA 84–1903 (D.N.J. January 9, 1986) (Available on WESTLAW, DCT database) ], permitting a finding of a pattern if one scheme to defraud is implemented through acts of mail or wire fraud substantially separated in time or substance, meets the intent of Congress in enacting RICO.

*Eastern Corporate,* 639 F.Supp. at 1535–36 (footnote omitted).

The instant case also involves allegations of mail and wire fraud. Consequently, the language from *Eastern Corporate* is on point. Another such opinion from this Circuit wherein it was held that a single scheme to defraud may still constitute a pattern of racketeering activity is *Roberts v. Smith Barney, Harris Upham & Co.,* 653 F.Supp. 406 (D.Mass.1986).

Since a single scheme to defraud may be capable of satisfying the pattern requirement, this Court is not prepared to rule that Tri-Continental's civil RICO count must be dismissed. Accordingly, the defendants' motion for partial summary judgment is denied without prejudice to its renewal once discovery is completed.