USCA1 Opinion

 

 December 9, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ ____________________ No. 92-1524 No. 92-1524 RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Plaintiff, Appellee, Plaintiff, Appellee, v. v. HOWARD COMMUNICATIONS CORPORATION, ET AL., HOWARD COMMUNICATIONS CORPORATION, ET AL., Defendants, Appellees. Defendants, Appellees. __________ __________ ROBERT T. HOWARD, ET AL., ROBERT T. HOWARD, ET AL., Defendants, Appellants. Defendants, Appellants. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, U.S. District Judge] [Hon. Frank H. Freedman, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Breyer, Chief Judge, Breyer, Chief Judge, ___________ Cyr and Boudin, Circuit Judges. Cyr and Boudin, Circuit Judges. ______________ ____________________ ____________________ John F. Henning, Jr. for appellants. John F. Henning, Jr. for appellants. ____________________ Sabin Willett with whom Patricia J. Hill and Bingham, Dana & Sabin Willett with whom Patricia J. Hill and Bingham, Dana & ______________ _________________ ________________ Gould were on brief for appellee. Gould were on brief for appellee. _____ ____________________ ____________________ ____________________ ____________________ CYR, Circuit Judge. Between 1988 and 1990, appellants CYR, Circuit Judge. ______________ Robert Howard and Scott Robb held FCC licenses to operate several radio stations through two closely-held companies, Howard Communica- tions Corporation and Citicom Radio of Pittsfield [hereinafter collec- tively, the "Companies"].1 In 1990, the Companies defaulted on a $2.65 million loan, personally guaranteed by Howard and Robb. Rhode Island Hospital Trust National Bank ["Hospital Trust"], the lender, sued for repayment and for the appointment of a receiver to take control of the Companies' assets, including their FCC licenses. In apparent contravention of the ensuing receivership order, appellants took various dilatory actions designed to impede FCC approval of the license transfers to the court-appointed receiver. Robb and Howard appeal the district court finding of civil contempt, and the summary judgment entered against them on their loan guaranty. We affirm. I I BACKGROUND BACKGROUND __________ Viewing the pleadings, affidavits, and other competent submissions in the light most favorable to appellants, see Milton v. ___ ______ Van Dorn Co., 961 F.2d 965, 969 (1st Cir. 1992), without crediting ____________ "conclusory allegations, improbable inferences, and unsupported ____________________ 1Howard Communications, a Delaware corporation, held FCC licenses to operate radio stations WGAM-AM and WRSI-FM in Greenfield, Massachu- setts. Citicom, a Massachusetts corporation, held FCC licenses to operate radio stations WBEC-AM/FM in Pittsfield, Massachusetts. speculation," Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 ____________ _________________________ (1st Cir. 1990), the following facts emerge.2 In 1988, appellants Howard and Robb, acting on the advice of their "financial consultant," Gregory L. Howard, approached Hospital Trust's Broadcast Lending Division in an effort to refinance a $1.1 million bank loan then held by Old Stone Bank. After extensive negotiations, Hospital Trust officials agreed to lend the Companies $2.65 million to refinance the loan and to pursue a program of expan- sion. A Loan Agreement and Revolving Credit and Term Note (hereinaf- ter, collectively, the "loan agreement") were duly executed by Robert Howard, as president of the Companies, on October 28, 1988. Concur- rently, appellants, as co-owners of the Companies, executed a Guaranty Agreement under which they personally guaranteed the Companies' loan agreement obligations. Until September 30, 1989, appellants were answerable under their guaranty whenever the Companies failed to make any payment in full, as it came due. After that date, appellants were liable on the occurrence of an event of default, as defined under 5.08 of the loan agreement. Howard and Robb reluctantly signed the guaranty at the insistence of Hospital Trust, in order to permit the ____________________ 2Other so-called "facts," presented by appellants for the first time on appeal, were not before the district court and will not be consid- ered on appeal. See Fed. R. App. Proc. 10(a). ___ 4 loan transaction to go forward. In all significant respects, the guaranty was valid and enforceable on its face.3 No loan payments were made after January 30, 1990. On April 17, 1990, the Companies admitted their inability to make loan payments in a timely manner, and on June 26, 1990, the Companies admitted an event of default under 5.08 of the loan agreement, thereby trigger- ing appellants' liability on their guaranty. On October 17, Hospital Trust brought an action against the Companies under their loan agree- ment, and against appellants on the guaranty. In February 1991, following several unsuccessful workout attempts, Hospital Trust moved for the appointment of a receiver to liquidate the Companies' assets in satisfaction of the unpaid loan balance. At the hearing held on the motion for the appointment of a receiver in July 1991, Robb orally represented to the district court that $2 million had been "segregated to [appellants'] account" for the purpose of settling the loan dispute. The court granted appellants' request to defer the appointment of a receiver, but no funds were forthcoming. On August 5, Howard filed an affidavit in support of a further request for deferral of the appointment of a receiver, repre- senting to the court that the funds would be available on or before ____________________ 3Appellants now state that they understood that the guaranty would not be enforced, that it was "for appearances only." They state that this understanding was reinforced by Hospital Trust's failure through accident or design to specify the "minimum net worth" appellants would be required to maintain in order to protect the bank's ability to collect on their guaranty. Appellants say they believed that the omission of the "minimum net worth" term rendered the guaranty "void on its face." See infra pp. 8-9. ___ _____ 5 August 15. Again the court acceded, but no funds were forthcoming. On August 23, the court appointed Robert Maccini, a media consultant, as receiver, effective August 26, and directed him to obtain control of the Companies' properties, including their FCC licenses. Appel- lants were enjoined to cooperate in the delivery of the Companies' ________ __ _________ properties and to refrain from "disturb[ing] or imped[ing] the receiv- er in the performance of his duties in any way." The procedural plot deepened on August 26, when Howard and Robb moved to stay enforcement of the receivership order pending FCC approval of the receiver's succession to the radio station license rights. The motion was denied. Although Howard and Robb could have appealed the receivership order, see 28 U.S.C. 1292(a)(2) (confer- ___ ring appellate jurisdiction of interlocutory appeals from receivership orders), no appeal was taken. Instead, on August 28, chapter 11 petitions were filed in behalf of the Companies, which resulted in an automatic stay of the district court receivership proceedings against the Companies. See 11 U.S.C. 362(a)(1). In accordance with FCC ___ regulations, see 47 C.F.R. 21-11(d), Howard and Robb thereupon submit- ___ ted a Transfer of Control Application to the FCC requesting authoriza- tion to transfer the radio station licenses to the Companies, qua ___ debtors-in-possession. As the district court proceedings against Howard and Robb were unaffected by the Companies' initiation of chapter 11 proceed- ings, see, e.g., In re Supermercado Gamboa, Inc., 68 B.R. 230, 232 ___ ____ ________________________________ (Bankr. D.P.R. 1986), on October 9, Hospital Trust moved for partial 6 summary judgment against appellants on their loan guaranty.4 Summary judgment was granted on April 1, 1992. The intervening dismissal of the Companies' chapter 11 proceedings on January 9, 1992, lifted the automatic stay of the receivership proceedings. See 11 U.S.C. 362(c)(1) & (2)(B). The ___ receiver accordingly moved to take control of the Companies' assets and, on or about January 17, 1992, in order to assume control of the FCC licenses from the former debtors-in-possession, forwarded license transfer applications to Howard and Robb for execution. Howard signed the transfer applications on January 22 and returned them to the receiver on January 28. In the meantime, however, on January 20, Robb had filed a separate set of license transfer applications, seeking ________ authorization to retransfer the FCC licenses from the Companies, qua ___ debtors-in-possession, to the Companies, qua former debtors-in-posses- ___ sion. Moreover, Robb notified the receiver that the receiver's license transfer applications should not be filed until appellants' applications had "cleared" the FCC. The receiver's transfer applica- tions were not filed with the FCC until February 4. On February 9, in response to the filing of the receiver's license transfer applications with the FCC, appellants filed a so-called "Transferor's Statement of Circumstances," signed by Robb and supported by Howard's affidavit. The statement and affidavit opposed the receiver's license transfer ____________________ 4Under their guaranty, Howard and Robb waived any right to require that Hospital Trust proceed against the Companies in the first in- stance. 7 applications and alleged a litany of illegal and abusive activities on the part of the receiver. The district court later found these accusations false, misleading, and violative of the receivership order. Simultaneously with the filing of the Transferor's Statement of Circumstances, the FCC received a so-called "Petition to Deny and Impose Forfeiture," signed by "Denise Harris" and purportedly submit- ted in behalf of the "HCC/CRP Creditors Committee." Although appel- lants' names do not appear on the "petition," upon further investiga- tion it was discovered that Denise Harris was a receptionist for Robb's law firm. The creditors committee petition reiterated the false allegations against the receiver, urged disallowance of the request for transfer of the Companies' licenses to the receiver, and recommended imposition of "the highest possible penalty" against the receiver and Hospital Trust. If the HCC/CRP Creditors Committee was anything other than a vehicle utilized by appellants to impede the license transfer to the court-appointed receiver, the record does not substantiate it. In any event, Howard and Robb now admit their responsibility for filing the petition signed by Harris, which the district court found to be a flagrant violation of its order enjoining appellants to refrain from "disturb[ing] or imped[ing] the receiver . . . ." On April 1, the district court found Howard and Robb in civil contempt for interposing (1) the unnecessary post-bankruptcy license retransfer, (2) the creditors committee's petition through 8 Harris, and (3) the "Statement of Circumstances" opposing the FCC license transfer to the receiver. Appellants were ordered to reim- burse Hospital Trust and the receiver for the attorney fees incurred in responding to the dilatory FCC filings by and in behalf of appel- lants. See Chambers v. NASCO, Inc., 111 S. Ct. 2123, 2133 (1991) ___ ________ ___________ (upholding inherent power of federal district court to shift counsel fees as sanction for contemptuous conduct which included, inter alia, _____ ____ false and frivolous FCC petitions); Hutto v. Finney, 437 U.S. 678, 689 _____ ______ (1978). Howard and Robb appeal. II II DISCUSSION DISCUSSION __________ 1. Summary Judgment 1. Summary Judgment ________________ Summary judgment was appropriate on the loan guaranty only if Hospital Trust demonstrated (1) the absence of any genuine issue of material fact, and (2) its right to judgment as a matter of law. See ___ Fed. R. Civ. P. 56(c); FDIC v. Singh, No. 92-1344, slip op. at 1 (1st ____ _____ Cir. Oct. 7, 1992). We view the evidence in the light most favorable to the non-moving parties, see Bank One Texas, N.A. v. A.J. Warehouse, ___ ____________________ _______________ Inc., 968 F.2d 94, 97 (1st Cir. 1992), and review the summary judgment ____ ruling de novo, see, e.g., Milton, 961 F.2d at 969. __ ____ ___ ____ ______ Appellants frivolously assert that the loan guaranty is "void on its face," as it omitted to prescribe a "minimum net worth" the guarantors would be required to maintain as contemplated by the 9 form.5 The appropriate inquiry is whether the omitted term is mate- _____ rial, i.e., whether its omission renders the guaranty "too vague and ____ ____ uncertain to constitute an enforceable contract." Jordan-Milton _____________ Mach., Inc. v. F/V Teresa Marie II, No. 91-1761, slip op. at 8 (1st ____________ ____________________ Cir. Oct. 30, 1992). The omission of a "minimum net worth" term was utterly immaterial, as it in no manner prejudiced appellants but simply deprived Hospital Trust of further protection under its loan guaranty. Appellants' claim that there was insufficient consideration for the loan guaranty is untenable under Rhode Island law, which makes clear that the loan made to the Companies was sufficient consideration for their personal guaranty. See Katz v. Prete, 459 A.2d 81, 86 (R.I. ___ ____ _____ 1983) ("When a corporate officer agrees to be liable for a debt of the corporation, it is not necessary for consideration to move to the ____________________ 5The subject net worth clause reads: Guarantors agree to maintain an excess of total assets over total liabilities, determined in ac- cordance with generally acceptable accounting principles . . . of at least ($ ). ______ Courts reject the view that "a guaranty agreement printed on a standard form is not enforceable unless all blanks of the form contain terms." FDIC v. Neitzel, 769 F. Supp. 346, 349 (D. Kan. 1991); see ____ _______ ___ also Cessna Finance Corp. v. Meyer, 575 P.2d 1048 (Utah 1978) (uphold- ____ ____________________ _____ ing guaranty agreement containing blank term for limitation on guar- antor's liability); North Carolina Nat'l. Bank v. Corbett, 271 N.C. ___________________________ _______ 444, 156 S.E.2d 835 (1967) (same); McCaleb v. National Bank of Com- _______ _____________________ merce, 752 S.W.2d 54 (Ark. App. 1988) (same). _____ 10 officer personally. It is enough if the corporation receives the consideration.").6 Appellants' further contention, that their liability under the guaranty expired on September 30, 1989, is belied by the express language of the guaranty: On or after September 30, 1989, the liability of the Guarantors hereunder shall be released at all such times that there is no Event of Default . . . . The Guaranty will immediately be reinstated at ___ ________ ____ ___________ __ __________ __ any time than [sic] an Event of Default under ___ ____ ____ _____ __ _____ __ _______ _____ _ 5.08 of the Loan Agreement occurs. ____ __ ___ ____ _________ ______ The record is clear that the Companies were in default under 5.08 of the loan agreement on or before June 26, 1990, and that the default remained uncured. Under the unambiguous terms of their guaranty agreement, therefore, appellants' liability was "reinstated." "[S]o long as the words of an agreement are plain and free from ambiguity, they must be construed in their ordinary and usual sense." Bank One ________ Texas, 968 F.2d at 98 (quoting McDonald's Corp. v. Lebow Realty Trust, _____ ________________ __________________ 888 F.2d 912, 913-14 (1st Cir. 1989)). See also United States v. ___ ____ ______________ Mallett, 782 F.2d 302, 303 (1st Cir. 1986) (express language of _______ guaranty bars defenses).7 ____________________ 6In their brief on appeal, Howard and Robb vaguely assert that Hospi- tal Trust orally promised them additional "consideration" in the form __________ of lending "expertise" or unspecified future loans. Since appellants advert to this contention with no attempt to develop a defense to liability on the loan or the guaranty, we decline to address it. See ___ Jordan-Milton Mach., slip op. at 12. ___________________ 7In the context of a loan guaranty or other contract, ambiguity typically means "language which 'is susceptible to differing, but nonetheless plausible, constructions . . .'" Singh, slip op. at 7 _____ (quoting Allen v. Adage, Inc., No. 91-2206, slip op. at 12 (1st Cir. _____ ___________ 11 Finally, we perceive no error in the district court ruling rejecting appellants' claim that their loan guaranty was fraudulently induced by Hospital Trust. Where, as here, a claim must be estab- lished by "clear and convincing evidence," see Halpern v. Pick, 522 ___ _______ ____ A.2d 197, 197 (R.I. 1987) (fraudulent inducement must be proved by "clear and convincing evidence"); see also Fashion House, Inc. v. K ___ ____ ____________________ _ Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989) (same) (New York law), __________ "evidence that 'is merely colorable or is not significantly probative' cannot deter summary judgment," Wynne v. Tufts Univ. School of Medi- _____ ____________________________ cine, No. 92-1437, slip op. at 7 (1st Cir. Oct. 6, 1992) (quoting ____ Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986)). Appellants ________ _____________ rely entirely on conclusory affidavits attesting to their "understan- ding" that the guaranty agreement would not be enforced and that additional "consideration" would be provided. Even assuming that their conclusory "understandings" were competent evidence, see Fed. R. ___ Civ. P. 56(e), notwithstanding the recognized "rule that where . . . the contract is unambiguous, extrinsic evidence as to . . . the intent of the parties should not be considered," Singh, slip op. at n.7, we _____ are persuaded that Rhode Island law would preclude appellants' reli- ance on Hospital Trust's alleged oral representations as a sufficient basis for opposing summary judgment. ____________________ 1992)). Appellants' suggested interpretation contradicts the plain language of the guaranty agreement. See id. at 11 (resisting inter- ___ ___ pretation which would render nugatory express clause in loan guaran- ty). 12 Appellants purport, inter alia, to be sophisticated busi- _____ ____ nessmen (Robb a communications lawyer; Howard a longtime executive with National Broadcasting Company) who retained a "financial advisor" to assist in the negotiation of a complex commercial transaction. They had made previous loan agreements which did not include personal guaranties. They read and understood the terms and reluctantly signed the guaranty, apparently well aware that it would bind them. As the Rhode Island Supreme Court held in Katz, 459 A.2d at 85, a sophisti- ____ cated businessman's asserted reliance on oral characterizations may be held unreasonable, as a matter of law, where the characterizations contradicted the plain language of a guaranty contract and are incon- sistent with the circumstances surrounding its execution. See also ___ ____ Mallett, 782 F.2d at 303-04 (guarantor's asserted reliance on "condi- _______ tional, tentative statement" by lender held inadequate). We conclude that appellants' contentions are without basis in law and that summary judgment was properly granted on their loan guaranty.8 ____________________ 8Whatever remaining summary judgment claims may lurk in appellants' confusing presentations on appeal are deemed waived. See United ___ ______ States v. Zannino, 895 F.2d 1 (1st Cir.), cert. denied, 494 U.S. 1082 ______ _______ _____ ______ (1990) (claims raised in conclusory fashion, unsupported by developed argumentation, are deemed waived); Jordan-Milton Mach., slip op. at 12 ___________________ (same). Although appellants ostensibly appear pro se, and under ___ __ normal circumstances "courts should hold pro se documents to a less ___ __ stringent standard," see Wightman v. Bureau of Alcohol, Tobacco & ___ ________ ______________________________ Firearms, 755 F.2d 979, 983 (1st Cir. 1985), we see no justification ________ for indulgence in these circumstances. Robb is an attorney and partner in the law firm of Robb and Henning. Moreover, at oral argument he was represented by a law partner, whose assistance presum- ably was as accessible in the earlier stages of the appeal. Howard, in turn, is a sophisticated businessman and successful consultant. 13 2. The Contempt Order 2. The Contempt Order __________________ Next, appellants challenge the district court's finding of civil contempt for "impeding the transfer of the FCC licenses to the Receiver." Ordinarily, a civil contempt order is treated as a non- appealable interlocutory order. See 11 Charles A. Wright & Arthur R. ___ Miller, Federal Practice & Procedure 2960 at 592 (1973). In the _____________________________ present case, however, we need not resolve the difficult jurisdic- tional issue raised by appellants, since the contempt finding and sanctions were abundantly warranted. See Norton v. Mathews, 427 U.S. ___ ______ _______ 524, 528-33 (1976) (where merits can be easily resolved in favor of the party challenging jurisdiction, resolution of complex jurisdic- tional inquiry may be avoided); see also DCPB, Inc. v. City of Leba- ___ ____ __________ ______________ non, 957 F.2d 913, 919-20 (1st Cir. 1992) (citing Cruz v. Savage, 896 ___ ____ ______ F.2d 626, 635 (1st Cir. 1989)).9 ____________________ There is no basis for assuming that either appellant was unable to obtain adequate representation on appeal, as both were represented by counsel below. 9We are unpersuaded by Hospital Trust's contention that appellants' payment of the sanction mooted their challenge. Although uncondition- al payment of a civil contempt fine precludes appellate review of the underlying contempt decree, see Cordero v. DeJesus-Mendez, 867 F.2d 1, ___ _______ ______________ 21 (1st Cir. 1989) ("[s]ince the contempt order has been complied with, no case or controversy remains, and the appeal must be dis- missed."); In re Cordova Gonzalez, 726 F.2d 16, 21 (1st Cir.), cert. ______________________ _____ denied, 466 U.S. 951 (1984), the record reveals that appellants did ______ not satisfy the contempt sanction unconditionally. Their check for the amount of the contempt sanction was forwarded to Hospital Trust on June 5, 1992, subject to the direction that the proceeds be "[placed] in escrow pending appeal if such action is appropriate." See App. ___ Exh. 21 (letter from Scott Robb to Sabin Willett). Although the instruction seems to leave it to the bank's discretion whether to escrow the funds, we think its intent is sufficiently clear: to 14 As supportably determined by the district court, see Project ___ _______ B.A.S.I.C. v. Kemp, 947 F.2d 11 (1st Cir. 1991) ("clear error" review __________ ____ appropriate on mixed question of law and fact in contempt proceedings; ultimate finding of contempt reviewed for abuse of discretion), appellants displayed a clear pattern of resistance, overt as well as surreptitious, to the enforcement of the receivership order. The contumacious conduct included their dilatory FCC applications to transfer the station licenses to the Companies following dismissal of the chapter 11 proceedings, rather than directly to the receiver; their notification to the receiver that his FCC applications for approval of the license transfers to himself should not be filed until their own dilatory transfer applications had been processed; and the misleading FCC filings (including the "creditors committee" filing signed by Robb's receptionist), designed to impede enforcement of the receivership order, notwithstanding the fact that appellants were explicitly enjoined to cooperate and to "refrain from . . . imped[ing] the receiver in the performance of his duties in any way." Cf. ___ Chambers, 111 S. Ct. at 2139 (upholding contempt sanctions for course ________ of conduct which included, inter alia, filing frivolous FCC opposition _____ ____ in order to circumvent judgment ordering transfer of license; "as long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders"). Appellants do not cite (and ____________________ escrow the funds pending resolution of any appeal of the contempt order. 15 neither we nor the district court have discovered) any authority which would support the claim that their actions were "compelled" by FCC regulations. Id. We discern no abuse of discretion in the district ___ court's contempt finding or its imposition of sanctions. Affirmed; double costs to appellee. Affirmed; double costs to appellee. ________ ______ _____ __ ________ 16